125 S.W.3d 769 (2003)
In the Interest of A.B., R.B., T.B., C.R., and D.M., Children.
No. 06-03-00079-CV.
Court of Appeals of Texas, Texarkana.
Submitted October 20, 2003.
Decided December 31, 2003.
*771 Lew Dunn, Law Offices of Lew Dunn, Longview, for appellant.
Renee Gartland, Asst. Dist. Atty., Longview, for appellee.
Daryl R. Atkinson, Attorney At Law, Longview, for Ad Litem A.B.
Mary Ann Rea, Attorney At Law, Longview, for Ad Litem R.B., T.B. & D.M.
Sarah S. White, Attorney At Law, Longview, for Ad Litem C.R.
Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION
Opinion by Chief Justice MORRISS.
According to Terri Kidd, a Child Protective Services (CPS) investigator, the living conditions at the Gregg County residence of Lista Palmer and her five children, at the time Kidd visited in early 2002, were filthy and unsafe. Kidd's visit was triggered by Palmer's report to CPS that her oldest child, son A.B., held the youngest child, five-year-old son D.M., over a chair and threatened to "take his booty." From *772 the children came reports that A.B. had previously sexually assaulted one or more of them.
Palmer appeals from the termination of her parental rights, asserting (1) the trial court's order was not timely and therefore invalid; (2) we should apply a de novo standard of review, not met here; (3) there is insufficient evidence of endangering conditions; (4) there is insufficient evidence of endangering conduct; and (5) there is insufficient evidence that termination of Palmer's parental rights is in the children's best interests. We affirm.
Background
Palmer and her five children had moved from Houston to Longview and ultimately into a rental home there. They had lived there for approximately a year and a half when, in January 2002, the children reported the A.B. incident to Palmer. Kidd investigated.
As a result of her initial investigation, Kidd prepared a "Child Safety and Evaluation Plan." In this plan, Palmer was to keep the four younger children separated from A.B. A.B. was taken to the Gregg County Juvenile Detention Facility.
One week later, on January 31, 2002, staff at the Child Advocacy Center interviewed the children with Kidd present. From this interview, the authorities discovered that C.R., the second oldest child, was involved with A.B. in the incident threatening D.M., and may have engaged in other incidents of sexual abuse of the younger siblings. Kidd testified she discovered that A.B. and C.R. would bribe T.B. and R.B. with gel pens so that they would not tell anyone what was happening and that A.B. and C.R. taught T.B. and R.B. "how to molest one another and hurt each other sexually." As a result, a second Child Safety and Evaluation Plan was issued. That Safety Plan provided that Palmer was to live with the three youngest children in the residence of Edward and Rosie Jarrells,[1] A.B. was to remain in the detention facility, and C.R. was to live with Palmer's uncle, Emory Gonerway, who lived immediately behind the Jarrellses. Further, the plan instructed Palmer to attend parenting training and counseling and to accept weekly visits from a homemaker. CPS recommended Palmer and the children enter counseling and complete a psychological assessment. Palmer and the children did not attend the recommended counseling, and she refused to complete the evaluation. Palmer says she attended counseling with the family's pastor.
CPS concluded Palmer had not excluded C.R. from living with the younger children as required by the Safety Plan. Palmer testified C.R. had not returned to live with her and the younger children claiming that, consistent with the Safety Plan, he lived at Gonerway's house behind the Jarrellses' house and that C.R. might have been seen near the Jarrellses' house walking to Gonerway's house from C.R.'s school bus stop. Palmer says C.R. spent the night at the Jarrellses' house on only one occasion and only after the children had been removed. Kidd testified that Palmer's concern regarding the alleged sexual abuse diminished and transformed into denial.
Based on these circumstances, CPS decided to remove the children from Palmer's care. The trial court agreed and entered a temporary order on May 22, 2002, naming the State as temporary managing conservator of the four younger children.
Palmer admitted using crack cocaine both while the children were in the home and after their removal. In September 2002, after the children were removed but *773 before termination of her parental rights, Palmer was arrested for possession of crack cocaine. She committed herself to Oak Haven Recovery Center on December 24, 2002, and remained until January 27, 2003. In early February, she then went to Tyler to participate in a Salvation Army recovery program and remained in that program until sometime in March when she left because she became romantically involved with one of its staff members. When she returned to Longview, she began attending Narcotics Anonymous meetings and continued to attend those meetings to the time of trial. Further, she testified she had been drug-free since entering Oak Haven. Results of a February drug screening at the Salvation Army were negative.
In February 2003, Palmer was interviewed by Tieraney Rockmore-Beall, who had taken over as caseworker for Palmer and her children. Palmer insisted she wanted visitation with the children. She visited the children once in February and once in March. Thereafter, she had no further contact with the children and made no further inquiry into the case's status.
About one year after the children were removed from Palmer's care, on May 12, 2003, the trial court ruled from the bench, terminating Palmer's parental rights to the four youngest children and naming the State as permanent managing conservator. On May 27, 2003, the trial court entered a written order confirming the earlier oral order. On June 19, 2003, the trial court entered findings of fact and conclusions of law.
Was Order Timely?
Palmer contends the trial court lost jurisdiction when it failed to render a timely final order. The Texas Family Code provides that "unless the court has rendered a final order ... on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit." Tex. Fam.Code Ann. § 263.401(a) (Vernon 2002).[2]
A trial court renders judgment by oral pronouncement of its decision in open court or by a signed, written memorandum filed with the clerk. In re Ruiz, 16 S.W.3d 921, 923-24 (Tex.App.-Waco 2000, no pet.). To constitute rendition of judgment, the trial court's oral pronouncement "must clearly indicate the intent to render judgment at the time the words are expressed." Id. at 924. Section 263.401(d) further defines what is necessary to constitute a final order for purposes of application of that provision. Tex. Fam.Code Ann. § 263.401(d) (Vernon 2002). The pertinent portion of that provision defines a "final order" as one which "terminates the parent-child relationship and appoints a relative of the child, another suitable person, or the department as managing conservator." Id.
*774 When deciding Ruiz, the Waco Court of Appeals was without a record of the trial court's oral pronouncement and, therefore, was limited to the trial court's notation on the docket sheet to determine whether that constituted rendition of a final order. Ruiz, 16 S.W.3d at 924. In concluding that the notation failed to satisfy the requirements of Section 263.401(d), the Waco court emphasized that the notation failed to specifically "grant" the Texas Department of Protective and Regulatory Services' petition or "order" or "decree" that parental rights be terminated. Tex. Fam. Code Ann. § 263.401(d). Further, the notation did not appoint a managing conservator. Ruiz, 16 S.W.3d at 924. A final order was not rendered in that case, then, until the trial court signed the order terminating parental rights on May 2, after the expiration of one year following the court's temporary order naming TDPRS as temporary managing conservator. Therefore, there was no final order rendered in the matter before the expiration of the time period outlined in Section 263.401(a), and the case should have been dismissed. Id. at 927-28.
In this case, however, we have a record of the trial court's oral pronouncement of its judgment. On May 12, 2003, at the conclusion of the hearing on the matter, the trial court stated as follows:
As to Lista Palmer, as to the children [C.R., R.B., T.B., and D.M.], I find that grounds exist as alleged by the State that she has knowingly placed or allowed the children to remain in conditions or surroundings which endanger their physical and emotional well-being; that she engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children; and I find that as to those children, it would be in their best interests to terminate the parent-child relationship. I do not find as to [A.B.] that she has not [sic][3] committed those grounds, and therefore, will deny the request of the State to terminate the parent-child relationship, although [A.B.] will remain in the conservatorship of the Department in anticipation that he will remain and complete the program in Pegasus. I do not find that Ms. Palmer at this time is able to take [A.B.] back or to provide a home for him, and it will be necessary for him to remain in their conservatorship until such time as she does.
As to the other four children, the Department will remain as the Managing Conservator of those children.
The trial court's oral pronouncement meets the requirements of a final judgment in accordance with Section 263.201(b) of the Texas Family Code. Tex. Fam.Code Ann. § 263.401(d). First, we note it expressly confirms the State's allegations and specifically finds that termination of Palmer's parental rights would be in the best interests of the children. Second, the pronouncement declares that TDPRS "will remain" the conservator of the children. Therefore, the trial court's oral pronouncement constituted rendition of a final judgment on May 12, 2003, before the first anniversary of the date the court first named TDHS temporary managing conservator for the children. Dismissal under Section 263.401(a), therefore, was not required, and the trial court's denial of the motion to dismiss on those grounds was not error.
*775 Apply a Higher Standard of Review?
A court may order involuntary termination only if the court finds that: (1) a parent has committed a predicate act or omission harmful to the child, and (2) termination is in the best interest of the child. Tex. Fam.Code Ann. § 161.001 (Vernon 2002). Any complaint that the evidence is legally or factually insufficient to support the findings necessary for termination is analyzed by a heightened standard of appellate review. See In re J.F.C., 96 S.W.3d 256, 266 (Tex.2002); In re C.H., 89 S.W.3d 17, 25 (Tex.2002).
Palmer contends federal constitutional due process principles require us to review de novo the trial court's decision to terminate parental rights. We decline this invitation to depart from established law setting forth the heightened standards of review applicable to termination of parental rights.[4] In reviewing the legal sufficiency of the evidence, we view all the evidence in a light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. Tex. Fam.Code Ann. § 101.007 (Vernon 2002); J.F.C., 96 S.W.3d at 266; C.H., 89 S.W.3d at 25. If, in light of the entire record, the disputed evidence that could not reasonably have been credited in favor of the finding is so significant that a trier of fact could not reasonably have formed a firm belief or conviction favoring the ruling, then the evidence is factually insufficient. Id. The court reasoned this provides a standard that "focuses on whether a reasonable jury could form a firm conviction or belief [yet] retains the deference an appellate court must have for the factfinder's role." C.H., 89 S.W.3d at 26. We will apply these established standards to the facts of Palmer's case as we address her remaining points of error challenging the sufficiency of the evidence to sustain several of the trial court's findings.
Did Conditions or Surroundings Endanger the Children?
Palmer contends the evidence is insufficient to establish by clear and convincing evidence that she "knowingly placed or knowingly allowed children to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." Tex. Fam.Code Ann. § 161.001(1)(D). Under this section, we look to see if the environment itself poses a danger to the child's physical or emotional well-being. In re S.H.A., 728 S.W.2d 73, 84 (Tex.App.-Dallas 1987, writ ref'd n.r.e.).
It is beyond question that sexual abuse is conduct that endangers a child's physical or emotional well-being. See In re R.G., 61 S.W.3d 661, 667 (Tex.App.-Waco 2001, no pet.); In re King, 15 S.W.3d 272, 276 (Tex.App.-Texarkana 2000, pet. denied). Parental knowledge that an actual offense has occurred is not necessary; it is sufficient that the parent was aware of the potential for danger and disregarded that risk. R.G., 61 S.W.3d at 667-68; see In re Tidwell, 35 S.W.3d 115, 118 (Tex.App.-Texarkana 2000, no pet.).
The record reveals ample evidence that Palmer, at a minimum, knew of a risk for sexual abuse and disregarded that risk. Although Palmer's account of what happened varied over time, she admits believing "something" happened. By not following *776 the required steps and using the State's recommendations for dealing with the psychological impact of the behavior, Palmer indicates she began to deny the allegations that A.B. and C.R. sexually abused their younger siblings. While she did take the initiative to report the matter and have A.B. placed in detention, she then ceased taking any steps toward ensuring the emotional well-being of the children, leaving unresolved any psychological issues concerning sexual abuse. Palmer's denial and her attendant lack of support could contribute to an environment in which the children could continue to be exposed to sexual abuse and in which they could be hesitant to report the conduct. See R.G., 61 S.W.3d at 671. Additionally, the record contains evidence that Palmer did not keep C.R. away from the younger children. Such a case would most certainly make for an environment which poses a danger to the younger children's well-being.
The record demonstrates endangering conditions other than those relating to sexual abuse. Kidd testified that the Palmer house was "extremely messy," that there was no electricity in the house, that the kitchen was "very dirty," and that there was "food laying [sic] around." Palmer's history of drug and alcohol abuse lends itself to an unstable home environment and weighs in favor of termination of her parental rights. See In re S.D., 980 S.W.2d 758, 763 (Tex.App.-San Antonio 1998, pet. denied). The record also reveals that on several occasions Palmer left the children in the care of Edward Jarrells, who had, to her knowledge, recent convictions for possessing a controlled substance and making terroristic threats.
Based on the foregoing evidence, we conclude the evidence was sufficiently clear and convincing to support the trial court's finding. Looking at the evidence in a light most favorable to the finding of the trial court, we conclude a reasonable trier of fact could have formed a firm conviction that Palmer knowingly placed or allowed her children to remain in conditions or surroundings that endangered their physical or emotional well-being. Also, the disputed evidence on the matter is not so significant that the trial court could not have formed a firm conviction or belief that its finding was true. We overrule Palmer's first and second points of error.
Did Conduct Endanger the Children?
Palmer also challenges the sufficiency of the evidence to support the trial court's finding that she engaged in conduct, or knowingly placed the children with persons who engaged in conduct, which endangered the physical or emotional well-being of the children.[5] Tex. Fam.Code Ann. § 161.001(E); Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 534 (Tex.1987).
Here, our inquiry, unlike that under Section 161.001(1)(D), focuses on conduct of either the parent or the persons with whom the parent has placed the children. See In re P.S., 766 S.W.2d 833, 836 (Tex.App.-Houston [1st Dist.] 1989, no writ). Subsection (D) permits termination based on a single act or omission, while subsection (E) requires a "course of conduct." R.G., 61 S.W.3d at 667. While the term "endanger" means more than a threat of metaphysical injury or the possible *777 ill effects of a less than ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffer injury. Boyd, 727 S.W.2d at 533. In our review, we look not only at evidence regarding the parent's active conduct, but also evidence showing the parent's omissions or failures to act. P.S., 766 S.W.2d at 835.
Palmer's failure to participate in counseling shows her unwillingness or inability to ensure the emotional well-being of the children following their experience with sexual abuse. This is but one instance of conduct in her pattern of behavior which endangered the well-being of her children. Palmer's failure to follow through to seek help after the A.B. incident and her history with crack cocaine and alcohol represent conduct that subjects the children to a life of uncertainty and instability, thereby endangering their physical and emotional well-being. See S.D., 980 S.W.2d at 763. The evidence is legally and factually sufficient to support the finding that Palmer engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children. We overrule Palmer's third and fourth points of error.
Is Termination in the Children's Best Interests?
Palmer argues that the evidence was legally and factually insufficient to support the trial court's conclusion that termination of the parent-child relationship is in the best interests of the children. The State, in addition to proving a predicate act or omission harmful to the child, must also prove by clear and convincing evidence that termination is in the child's best interest. C.H., 89 S.W.3d at 23.
A number of factors have been considered by the courts in ascertaining the best interest of the child. Included among these are the following: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976).
The record contains no evidence that the children desire to live with their mother. To the contrary, C.R. appeared detached and showed no interest in even talking to Palmer. In an interview at Longview Youth Shelter, C.R. even expressed to his psychologist his desire to stay at the shelter. C.R. has shown significant improvement in the more structured environment of a residential treatment center. There is, however, evidence that the three youngest children are bonded to their mother and have expressed affection for her.
The record also shows that Palmer has been unable to provide for the physical needs of the children as demonstrated by the "extremely messy" house, the "very dirty" kitchen, the "food laying [sic] around," and lack of electricity.[6] Palmer's *778 denial that sexual abuse occurred in her home and her unexplained failure to undergo family counseling demonstrates a failure to care for the emotional needs of the youngest children. Further, the State maintains that there are several good programs for the children and that the children are good candidates for adoption into a stable home.
Palmer's failure to protect the emotional well-being of the children following the allegations of sexual abuse, her failure to maintain a healthy, safe, and stable living environment, and her history of drug and alcohol abuse indicate her relationship with her children is not good.
Viewing the evidence in a light most favorable to the finding, we conclude there was sufficient evidence to enable the trial court to form a firm belief that termination of Palmer's parental rights was in the best interests of the four youngest children. While there is some evidence that could be said to dispute that finding, that evidence is not so significant that the trial court could not have maintained a firm belief favoring the ruling. The record contains clear and convincing evidence of Holley factors[7] supporting the conclusion that termination of Palmer's parental rights is in the best interests of the children. We overrule Palmer's contentions to the contrary.
Conclusion
Since the trial court rendered judgment within the time frame allowed by Section 263.401(a), the trial court properly denied Palmer's motion to dismiss the cause. Rejecting Palmer's argument that we should employ a de novo standard of review and adhering to the established standards applicable to cases involving termination of parental rights, we hold clear and convincing evidence supports the trial court's findings that Palmer allowed the children to remain in conditions which endangered their physical and emotional well-being, that Palmer engaged in conduct, and placed the children with persons who engaged in conduct, endangering the well-being of the children, and that termination of Palmer's parental rights as to the four youngest children is in their best interests.
Accordingly, we affirm the trial court's judgment terminating Palmer's parental rights to these four children.
NOTES
[1] Rosie Jarrells is Palmer's mother.
[2] The procedure outlined in Section 263.401(a) is procedural, not jurisdictional. Tex. Fam.Code Ann. § 263.401(a) (Vernon 2002); In re D.D.M., 116 S.W.3d 224, 229 (Tex.App.-Tyler 2003, no pet.) (released for publication October 20, 2003); In re J.B.W., 99 S.W.3d 218, 224 (Tex.App.-Fort Worth 2003, pet. denied). Therefore, it was necessary for Palmer to have preserved this error for appellate review. In order to preserve error as to a trial court's failure to dismiss under Section 263.401(a), one must file a motion to dismiss based on those grounds and obtain a ruling on that motion. J.B.W., 99 S.W.3d at 224. Otherwise, the right to complain regarding the trial court's failure to dismiss the action is waived. See id. On June 5, Palmer filed with the trial court a motion for new trial that, in the alternative, prayed for dismissal of the cause as provided by Section 263.401(a). This motion properly preserved for review the trial court's failure to dismiss the action.
[3] From the context, the trial court obviously found no ground to terminate parental rights as to A.B.
[4] The court explicitly rejected standards "that retain the traditional factual sufficiency standard while attempting to accommodate the clear-and-convincing burden of proof." In re C.H., 89 S.W.3d 17, 25 (Tex.2002). The court also disapproved of a test articulated in several cases requiring courts of appeals to determine whether a reasonable trier of fact could conclude the existence of a disputed fact is "highly probable." Id. at 26.
[5] We recognize that an affirmative finding by clear and convincing evidence satisfying any one of the subsections of Section 161.001(1) is sufficient to terminate parental rights. See In re S.F., 32 S.W.3d 318, 320 (Tex.App.-San Antonio 2000, no pet.). Therefore, we could affirm the trial court's decision based on our previous discussion of the endangering conditions or surroundings, without addressing Palmer's contention as to the trial court's finding on endangering conduct. Id. We address these issues for fairness and certainty.
[6] Palmer denies that, at the time of Kidd's visit, her electricity was off. She says that only once had her electricity ever been out and that occurred about one month before Kidd's visit and lasted for one to two weeks.
[7] See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976).