Opinion issued September 25, 2008












     

In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00111-CV




HECTOR ISRAEL LOPEZ, Appellant

v.

DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee




On Appeal from the 313th District Court 
Harris County, Texas
Trial Court Cause No. 2006–11190J




MEMORANDUM OPINION 

          Following a bench trial, the trial court terminated the parental rights of
appellant, Hector Israel Lopez, to his two minor children, A.L.O.–boy and
A.L.O.–girl, and named the Department of Family and Protective Services (“the
Department”) as the children’s sole managing conservator. Presenting four issues,
Lopez (1) contends that the trial court abused its discretion by determining his appeal
is “frivolous”;


 (2) challenges the legal and factual sufficiency of the evidence to
support the termination order, particularly the predicated finding that Lopez
knowingly placed or knowingly allowed the children to remain in conditions or
surroundings which endangered the physical well-being of the children


; (3) asserts
that the evidence is legally and factually insufficient to support a determination that
termination was in the children’s best interest;


 and (4) challenges the trial court’s
determination that the Department should be appointed as the children’s sole
managing conservator.


 
          We affirm in part and reverse and render in part.
Background
          On December 4, 2004, Lopez took his two-and-one-half-year old son,
A.L.O.–boy, to the emergency room. An examination revealed that A.L.O.–boy had
a strangulation mark on his neck. A.L.O.–boy also had petechial hemorrhaging under
his eye and bleeding in his ear canal. Doctors believed that the petechial
hemorrhaging was caused by asphyxiation and indicated that A.L.O.–boy had been
strangled. The doctors noted that A.L.O.–boy had an “old” chemical burn on his leg
running from his thigh to past his knee. The doctors further noted that A.L.O.–boy’s
anal area appeared irritated. A.L.O.–boy also appeared dirty, as if he had not been
bathed. 
          The Department was contacted regarding the injuries. Lopez, who is Spanish
speaking, spoke with the Department’s caseworker, Anna Scott, through an
interpreter. Lopez told Scott that he was present when the injury occurred. Lopez
claimed that the injury was accidental. Lopez explained that his wife, Aracely
Ordonez, and A.L.O.–boy were sleeping on a sofa bed when Ordonez’s hair became
wrapped around A.L.O.–boy’s neck causing the strangulation injury. Lopez told
Scott that “accidents happen” and that he believed Ordonez had not purposefully hurt
A.L.O.–boy. 
          The Department took emergency custody of A.L.O.–boy and of his five-month-old baby sister, A.L.O.–girl, and filed suit for the children’s protection. The trial
court granted temporary managing conservatorship of the children to the Department 
and ordered Lopez and Ordonez to complete the requirements of the Department’s
service plans. 
          Ordonez and Lopez were both charged with the criminal offense of injury to
a child. Ordonez pleaded guilty to the offense, was convicted, and sentenced to six
months in jail. The criminal charges against Lopez were dismissed. 
          Before serving the full six months in jail, Ordonez was deported to Guatemala. 
Lopez is also subject to deportation, but has appealed the determination. Four other
adult relatives, who resided in the home with Lopez and Ordonez at the time of the
incident, were also deported to Guatemala. No criminal charges relating to
A.L.O.–boy’s injuries were filed against the four relatives. 
          The Department developed service plans for Lopez and Ordonez. Lopez’s
service plan required him to complete parenting classes and an anger management
course, to complete a psychological evaluation, to maintain stable housing and
employment for six consecutive months, and to cooperate with law enforcement
regarding the investigation of A.L.O.–boy’s injuries. Lopez completed the parenting
classes and the psychological evaluation but failed to complete the anger management
class or to verify employment and housing for the required time period.
          While the case was pending, the Department agreed to place the children with
Lopez’s parents, who live in Guatemala. A national Guatemalan agency conducted
a home study on the grandparents. The agency concluded that the grandparents
would be a suitable placement for the children. Nonetheless, the Department refused
to allow the children to be placed with the grandparents because the Department
learned that the four adult relatives, who were living in the home with A.L.O.–boy
and his parents at the time of the injury, were at the time of the study living with the
grandparents. The Department also explained that A.L.O.–girl, who suffers from a
slight developmental delay, might not have access in Guatemala to the therapies she
needed. 
          The Department ultimately sought to terminate Lopez’s and Ordonez’s 
parental rights to A.L.O.–boy and to A.L.O.–girl. Among the grounds for which the
Department sought termination of Lopez’s parental rights was its allegation that
Lopez had “knowingly placed or knowingly allowed the children to remain in
conditions or surroundings which endanger the physical or emotional well-being of
the children.”


 The Department also requested that it be appointed the children’s sole
managing conservator pursuant to Family Code section 153.131.
          The case was tried to the bench on February 7, 2008. Only two witnesses
testified at trial: the Department’s caseworker, Anna Scott, and the children’s foster
mother, Jacqueline LaBelle. Lopez did not testify at trial.
          When asked on cross-examination what evidence the Department had to show
that Lopez knowingly placed or knowingly allowed the children to remain in
surroundings that endangered their physical or emotional well-being, Scott
responded, 
[Lopez] knew that [A.L.O.–boy] was injured because prior to him going
to this visit the child had been sick, and he had been taking him to the
doctor. And he wasn’t following through with everything so he—it was
obvious that he knew something, that the baby had been injured, but I
can’t say that he knew that the mother injured him. 
          Scott was also asked to identify Lopez’s conduct that demonstrated he
knowingly allowed A.L.O.–boy to remain in conditions that endangered the child. 
Scott answered, 
For one, he allowed the child to be–had a chemical burn on his leg at
one point, and we can’t find any medical records that it was ever treated. 
For two, the child had obvious signs of strangulation and–so I mean, I
don’t know. I don’t understand what you are trying to ask me. 
Scott also testified that she had no evidence that Lopez participated in or allowed the
injuries to A.L.O.–boy to occur. 
          LaBelle, the children’s foster mother, testified that the children are doing well. 
LaBelle explained that A.L.O.–boy has no special needs but A.L.O.–girl is
approximately three months behind developmentally and attends physical, speech,
and occupational therapy. LaBelle testified that A.L.O.–girl had recently made
progress, but “needs a lot of work to keep her [progressing].” 
          LaBelle also testified that Lopez had attended all but one of his visitations with
the children. LaBelle stated that she observed Lopez interacting with the children and
perceived him to be a loving father. 
          At the end of the trial, the trial court concluded that Lopez’s and Ordonez’s
parental rights to the children should be terminated. With regard to Lopez’s parental
rights, the judgment provides that the trial court found by clear and convincing
evidence that Lopez had “knowingly placed or knowingly allowed the children to
remain in conditions or surroundings which endangers the physical or emotional well-being of the children, pursuant to § 161.001(1)(D) of the Texas Family Code.” The
decree further recites that the trial court found that termination was in the children’s
best interest. 
          The trial court also appointed the Department as the children’s sole managing
conservator. In support of this ruling, the decree reflects that the trial court found the
appointment of a parent as managing conservator would not be in the children’s best
interest because such appointment would significantly impair the children’s physical
health or emotional development, and that appointment of the the Department as sole
managing conservator would be in the children’s best interest. 
          Lopez appeals the trial court’s termination of his parental rights to the children
and the appointment of the Department as the sole managing conservator. Ordonez
has not appealed. 
          Lopez timely filed a statement of appellate points and an affidavit of indigence. 
Following a hearing, the trial court found Lopez to be indigent and determined
Lopez’s appeal to be “frivolous.” Despite the frivolousness determination, the
appellate record contains all the evidence admitted at the termination trial, and the
parties have fully briefed the issues on the merits.
Legal Sufficiency of the Evidence To Support Termination
          In his second issue, Lopez challenges the legal sufficiency of the evidence to
support the trial court’s predicate termination finding—that Lopez knowingly placed
or knowingly allowed the children to remain in conditions or surroundings that
endangered their physical or emotional well-being, pursuant to Family Code
subsection 161.001(1)(D).



A.      Burden of Proof, Standard of Review, and Governing Principles
          Because termination of parental rights imposes permanent, irrevocable
consequences, due process requires that termination decisions be supported by clear
and convincing evidence. See Tex. Fam. Code Ann. § 161.001; see also In re J.F.C.,
96 S.W.3d 256, 263 (Tex. 2002). “‘Clear and convincing evidence’” means the
measure or degree of proof that will produce in the mind of the trier of fact a firm
belief or conviction as to the truth of the allegations sought to be established.” Tex.
Fam. Code. Ann. § 101.007 (Vernon 2002); J.F.C., 96 S.W.3d at 264. 
          To be legally sufficient under the clear and convincing standard, the evidence
must be such that a fact-finder could reasonably form a firm belief or conviction that
the grounds for termination were proven. In re J.P.B., 180 S.W.3d 570, 573 (Tex.
2005). In conducting our review, we must view all the evidence in the light most
favorable to the finding and judgment by assuming that the fact-finder resolved any
disputed facts in favor of its finding, if a reasonable fact-finder could have done so.
Id. In so doing, we must disregard all evidence that a reasonable fact-finder could
have disbelieved. Id. Nonetheless, we must consider undisputed evidence even if it
is contrary to the finding. Id. In other words, we must consider evidence favorable
to termination if a reasonable fact-finder could and disregard contrary evidence unless
a reasonable fact-finder could not. Id. As a result, we consider all of the evidence,
not just that which favors the verdict. Id. 
          We must be mindful, however, that we cannot intrude on the province of the
fact-finder by weighing witness credibility or issues that depend on the appearance
and demeanor of the witnesses. Id. at 573, 574. Therefore, we must defer to the
fact-finder’s credibility determinations, if they are reasonable. Id. at 573.
          Because the natural rights that exist between parents and their children are of
constitutional dimension, we are required to strictly scrutinize termination
proceedings and to construe involuntary termination statutes strictly in favor of the
parent. Holick v. Smith, 685 S.W.2d 18, 20–21 (Tex. 1985). Family Code section
161.001 provides the method by which a court may involuntarily terminate the
parent–child relationship. See Tex. Fam. Code. Ann. § 161.001. This section
permits a court to terminate the parent–child relationship only if the court finds, by
clear and convincing evidence, that (1) one or more of the acts enumerated in section
161.001(1) was committed and (2) termination is in the best interest of the child. Id. 
Both elements must be established; termination may not be based solely on the best
interest of the child. Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987).
          Subsection 161.001(1)(D) permits termination when clear and convincing
evidence shows that the parent “knowingly placed or knowingly allowed the child to
remain in conditions or surroundings which endanger the physical or emotional
well-being of the child.” Tex. Fam. Code Ann. § 161.001(1)(D) (Vernon Supp.
2008). Generally, “endanger” means to expose to loss or injury or to jeopardize. 
Boyd, 727 S.W.2d at 533. Evidence of endangerment requires more than a showing
of a threat of metaphysical injury or the possible ill effects of a less-than-ideal family
environment, but need not show that the conduct was directed at the child or that the
child actually suffered injury. Id.
          Subsection D concerns the child’s living environment, rather than the parent’s
conduct, though parental conduct may be relevant to the child’s environment. See In
re D.T., 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied). The parent
need not have certain knowledge that an actual injury is occurring, but must at least
be aware of the potential for danger to the child in such an environment and must
have disregarded that risk. In re C.L.C., 119 S.W.3d 382, 392 (Tex. App.—Tyler
2003, no pet.); In re R.G., 61 S.W.3d 661, 667–68 (Tex. App.—Waco 2001, no pet.). 
Endangerment can be exhibited by both actions and failures to act. In re U.P., 105
S.W.3d 222, 233 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Subsection
D permits termination of parental rights based on a single act or omission by the
parent. In re L.C., 145 S.W.3d 790, 797 (Tex. App.—Texarkana 2004, no pet.).
          The Department contends that Lopez’s presence when Ordonez inflicted the
strangulation injury and his later false statement that the injury was an accident is
circumstantial evidence from which a fact finder could, by reasonable inference, form
a firm conviction or belief that Lopez knowingly allowed A.L.O.–boy to be in an
endangering environment. Although a single act or omission may support a
subsection D finding, no evidence was presented of Lopez’s actions, or failure to act,
at the time of, or before, the injury occurred. The evidence showed only that he was
present at the time of the injury and then took A.L.O.–boy to the emergency room for
treatment of the injury. No evidence revealed any of the circumstances surrounding
the injury, and the undisputed evidence showed that criminal charges against Lopez
relating to the injury were dismissed. 
          In addition, the Department presented no evidence indicating that Lopez was
aware Ordonez posed a risk to A.L.O.–boy before the injury occurred. Cf. In re A.B.,
125 S.W.3d 769, 775 (Tex. App.—Texarkana 2003, pet. denied) (upholding
subsection D endangerment finding when evidence showed parent was aware that
children’s environment put them at risk for sexual assault). Moreover, Lopez’s false
post-injury statement regarding Ordonez’s conduct does not, standing alone, support
a subsection D termination finding without additional contextual evidence indicating
that Lopez knowingly allowed A.L.O.–boy to remain in an environment where he was
at risk for injury. 
          The Department points to evidence that A.L.O.–boy has an“old” chemical burn
on his leg extending from his thigh to his knee and had an “irritated” anus at the time
of the strangulation injury. The Department suggests that this is evidence from which
past abuse could be inferred. We disagree. No evidence was presented to show the
circumstances under which the chemical burn occurred. More precisely, nothing in
the record suggests that the chemical burn resulted from abuse or neglect, or whether
A.L.O.–boy was under Lopez’s or Ordonez’s care when the burn occurred. Evidence
of a single chemical burn, without additional evidence, is not clear and convincing
evidence that Lopez permitted A.L.O.–boy to remain in a dangerous environment. 
Cf. J.P.B., 180 S.W.3d at 573–74 (concluding that medical evidence of child’s 21
bone fractures likely caused by abusive treatment while in the care of appellant’s
spouse was legally sufficient evidence to show appellant allowed child to remain in
dangerous environment). Similarly, no evidence, medical or otherwise, was admitted
to describe the nature or possible causes of A.L.O.–boy’s anal irritation. 
          The Department also cites the caseworker’s testimony that the Department
could find no medical records to indicate that the chemical burn had been treated. 
The Department contends that failure to provide medical care has been found
sufficient in other cases to support termination. While the Department’s statement
of the law may be correct, testimony that the Department was not able to locate
medical records showing that the burn had been treated is too meager, by itself, to
support an inference that Lopez did not ensure that his son’s burn was properly
treated. 
          Lastly, the Department relies on the reason given by its caseworker at trial to
support termination:
[Lopez] knew that [A.L.O.–boy] was injured because prior to him going
to this visit the child had been sick, and he had been taking him to the
doctor. And he wasn’t following through with everything so he—it was
obvious that he knew something, that the baby had been injured, but I
can’t say that he knew that the mother injured him. 
          Despite the Department’s reliance, the cited testimony is not legally sufficient
to support a subsection D termination finding. It is unclear from the record to what
“visit” the caseworker is referring. It is equally unclear what the caseworker meant
when she testified that Lopez was not “following through with everything.” No other
testimony or evidence was given to clarify the caseworker’s cited testimony.           We conclude that the evidence at trial was not such that a fact-finder could
reasonably form a firm belief or conviction that Lopez knowingly placed or
knowingly allowed A.L.O.–boy and A.L.O.–girl to remain in conditions or
surroundings which endanger their physical or emotional well-being. We hold that
the evidence is legally insufficient to support the trial court’s subsection D finding. 
          We sustain Lopez’s second issue on the basis that the evidence was legally
insufficient to support the predicate termination finding.


 
Appointment of the Department as Sole Managing Conservator 
          In his fourth issue, Lopez challenges the trial court’s appointment of the
Department as the children’s sole managing conservator. 
          We give wide latitude to a trial court’s decision on custody, control,
possession, and visitation matters. Earvin v. Dep’t of Family & Protective Servs., 229
S.W.3d 345, 350 (Tex. App.—Houston [1st Dist.] 2007, no pet.). We review a
conservatorship determination by the trial court for abuse of discretion, and may
reverse the determination only if the decision is arbitrary and unreasonable. In re
J.A.J., 243 S.W.3d 611, 616 (Tex. 2007); Earvin, 229 S.W.3d at 350. When applying
an abuse of discretion standard, challenges to the legal and factual sufficiency of the
evidence are not independent grounds of error but are factors used in assessing
whether the trial court abused its discretion. In re B.P., Jr., No. 02-07-251-CV, 2008
WL 2639264, at *1 (Tex. App.—Dallas July 3, 2008, no pet. h.) (mem. op.); Gardner
v. Gardner, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.).
          Family Code section 153.131(a) provides for the appointment of the parent as
sole managing conservator or the parents as joint managing conservators, unless the
court finds the appointment would not be in the best interest of the child because it
would significantly impair the child’s physical health or emotional development. 
Tex. Fam. Code Ann. § 153.131(a) (Vernon 2002).


 For the court to award
managing conservatorship to a non-parent under section 153.131, the non-parent must
prove by a preponderance of credible evidence that appointing the parent as a
managing conservator would result in serious physical or emotional harm to the child. 
Whitworth v. Whitworth, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007,
no pet.). Evidence must be presented to support the logical inference that some
specific, identifiable behavior or conduct of the parent will probably cause that harm. 
Id. This link between the parent’s conduct and harm to the child may not be based
on evidence that merely raises a surmise or speculation of possible harm. Id. 
          An adult’s future conduct may be somewhat determined by recent past conduct. 
Id. In and of itself, however, evidence of past misconduct may not be sufficient to
show present unfitness. Id. Further, it is wholly inadequate simply to present
evidence that a non-parent would be a better choice as custodian of the child. Id.
(citing Lewelling v. Lewelling, 796 S.W.2d 164, 167 (Tex. 1990)). The non-parent
must offer evidence of specific acts or omissions of the parent that demonstrate an
award of custody to the parent would result in physical or emotional harm to the
child. Id. Specific acts or omissions of a parent implicating a significant impairment
to a child’s emotional development may be inferred from direct evidence. Id.
          Although clear and convincing evidence was not presented to support a
determination that Lopez knowingly placed or allowed the children to remain in
conditions that would endanger their physical or emotional well-being, evidence was
presented indicating that appointment of Lopez as managing conservator would
significantly impair the children’s physical or emotional development. Specifically,
the following supports the trial court’s determination that appointment of Lopez as
managing conservator would significantly impair the children’s physical health or
emotional development:
          •        Lopez told hospital personnel and the Department that A.L.O.–boy’s
strangulation injury was accidental. Lopez denied that Ordonez had
intentionally injured the child and provided an implausible explanation
for the injury. 
 
          •        Ordonez subsequently pleaded guilty to intentionally injuring
A.L.O.–boy by strangling him.
 
          •        A.L.O.–boy has an old chemical burn on his leg from his thigh to his
knee. At the time of the strangulation injury, doctors noted that he had
an irritated anus and had not been bathed. 
 
          •        Lopez was unable to maintain stable employment and housing as
required by the Department’s service plan.
 
          •        Lopez failed to comply with the service plan by completing anger
management classes.
 
          •        A.L.O.–girl has a developmental delay requiring speech, occupational,
and physical therapy.

          The record also contains the following evidence that weighs against the trial
court’s conservatorship determination:
          •        Lopez took A.L.O.–boy to the hospital following the injury.
 
          •        Lopez went to all but one of his visitations with his children after the
Department gained custody.
 
          •        The foster mother testified that Lopez interacted with the children
during the visits and appeared to be a loving father. 
          While evidence was presented that Lopez cares for his children, other evidence
indicates Lopez’s unwillingness to place his children’s welfare first. When faced
with telling authorities about the cause of A.L.O.–boy’s injuries, the evidence
indicates that Lopez chose to protect his wife. By failing to be forthcoming about his
wife’s assault of A.L.O.–boy, Lopez risked placing his children in a potentially
harmful environment. Indeed, while evidence of A.L.O.–boy’s chemical burn injury
is not clear and convincing evidence to support termination, it is probative of Lopez’s
inability to protect his children from serious injury. 
          Given this evidence, coupled with evidence of Lopez’s inability to maintain
stable housing and employment, it was within the trial court’s discretion to find that
appointing Lopez as the children’s managing conservator would significantly impair
their physical and emotional development. Thus, we hold, under the appropriate
standards of review that the trial court properly exercised its discretion by appointing
the Department as the children’s sole managing conservator. See Earvin, 229 S.W.3d
at 351 (holding that trial court did not abuse discretion by appointing the Department
as child’s sole managing conservator when evidence showed father’s unwillingness
to provide environment that was in child’s best interest).
          We overrule Lopez’s fourth issue. 
Conclusion
          We affirm the portion of the decree assigning the Department as the sole
managing conservator of A.L.O.–boy and A.L.O.–girl. We reverse the portions of the
decree related to the termination of Lopez’s parental rights and render judgment
denying the Department’s petition for termination of Earvin’s parental rights. 



 

                                                             Laura Carter Higley
                                                             Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Higley.