

# IN THE
# TENTH COURT OF APPEALS

## No. 10-22-00328-CV

## IN THE INTEREST OF A.P. AND M.P., CHILDREN

**From the 82nd District Court
Falls County, Texas
Trial Court No. CV41021**

## MEMORANDUM OPINION

In one issue, appellant, R.P., challenges the trial court's order terminating her parental rights to A.P. and M.P.[1]  We affirm.

### Analysis

In her sole issue on appeal, R.P. contends that the trial court's predicate findings for termination of her parental rights under subsections 161.001(b)(1)(D), (E), and (O) of the Texas Family Code are not supported by legally and factually sufficient evidence.[2]  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O).  We disagree.

---

[1] Neither of the biological fathers of A.P. and M.P. are parties to this appeal.

[2] On appeal, R.P. does not challenge the trial court's best-interest finding.

STANDARD OF REVIEW & APPLICABLE LAW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *see also In re J.F.-G.*, 612 S.W.3d 373, 381-82 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). If multiple predicate violations are found by the factfinder, we will affirm based on any one finding because only one finding is necessary for termination of parental rights. *See In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied). Moreover, we give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge "of the credibility of the witnesses and the weight to give their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

Subsection 161.001(b)(1)(E) of the Texas Family Code provides that a parent's rights may be terminated if it is found that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). To "endanger" means to expose to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Under subsection 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was

the direct result of the parent's conduct, which includes acts, omissions, or failures to act. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied). It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533. The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Id.* In making this determination, a factfinder court may consider conduct that occurred before and after the child's birth, in the child's presence and outside the child's presence, and before and after removal by the Department. *In re J.O.A.*, 283 S.W.3d at 345. A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize a child's present or future physical or emotional well-being. *See In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).

DISCUSSION

Here, the Texas Department of Family and Protective Services (the "Department") first got involved in this case after A.P., who was eight years old at the time, told her aunt that R.P.'s boyfriend, William "Willie" Brooks, sexually abused her. The Department conducted a forensic interview of A.P. and confirmed the sexual-abuse allegation. Accordingly, both A.P. and M.P. were removed from R.P.'s home in December 2020.

A criminal investigation of the sexual-abuse allegation followed. At this time, R.P. insisted that she believed A.P. and that she would end the relationship with Brooks. R.P. promised the Department that she would "be protective" and that Brooks would not have

any more access to her children. The Department referred R.P. to community services and closed the case in February 2021.

Less than a month later, in March 2021, Brooks was arrested for the sexual assault of A.P. At this time, the Department learned that R.P. had not ended her relationship with Brooks and that R.P. had allowed Brooks to be around A.P. and M.P. again. Olga Solyakova, an investigator supervisor for the Department, testified that, after the arrest of Brooks, R.P. no longer believed A.P.'s allegation. As shown in her testimony, R.P. believes that her sister and her husband coerced A.P. to concoct the story so that A.P. could live with them. R.P. also denied that Brooks was in her home. However, R.P. later changed her story to admit that Brooks had been in her home, but that the children were not there, and that she had recently dropped him off at the hospital because Brooks had had a heart attack. R.P. also explained that she does not believe that Brooks sexually abused A.P. because "[she] was there too." And because she did not believe A.P.'s allegation of sexual abuse, R.P. went to the police station to try and get the sexual-assault charge against Brooks dropped.

As part of her investigation, Solyakova spoke with the children. A.P. and M.P. confirmed that Brooks was living with them. M.P. told Solyakova that Brooks "made dinner yesterday in the house." Given this information, the Department removed the children from R.P.'s home again.

Later in her testimony, Solyakova described her interview of A.P. According to Solyakova, "[A.P.] stated that Mr. Brooks has licked her vagina, he had put his finger in his—in her vagina, and that he has tried to hump her clothed (phonetic) and that he has tried to put his penis in her vagina." Solyakova also learned that A.P. had been "touched [] sexually" by R.P.'s cousin, B.N., who is a registered sex offender. B.N. purportedly digitally penetrated A.P. after R.P. left her and M.P. and B.N.'s care. Solyakova was unaware of any investigation or charges that were brought against B.N. for the alleged sexual assault of A.P.

Solyakova also spoke with Brooks at the Falls County Jail. Brooks confirmed that he and R.P. never broke up and that "he was back in the home and basically to the tune of 'I don't understand what's going on. These kid's [sic] love me like I'm their father, and I have been in their lives . . . .'" Brooks also stated that he had been picking the children up from school. He denied sexually abusing A.P.

Julie Holley, the primary Department caseworker assigned to R.P., testified that A.P. and M.P. told her that Brooks was "at the house all the time even after [the case in December 2020]." Indeed, a review of A.P.'s medical records showed that Brooks took A.P. to the hospital for strep throat after December 2020, and that Brooks was listed on the paperwork as the adult responsible for A.P. at that hospital visit. Additionally, the children informed Holley that they called Brooks "daddy and looked at him as a father figure."

Holley also testified about R.P.'s penchant for drug use. R.P. testified positive for cocaine and marihuana on April 29, 2022, and tested positive for marihuana on May 6, 2022. Furthermore, the record shows that R.P. did not complete all court-ordered drug tests.

Holley further described the current placement for the children. Although the initial placement was rough, the children "have made tremendous progress" and are doing great in school. In Holley's opinion, A.P. and M.P. "look like they've lived there their entire life." R.P. was allowed visitation with the children; however, R.P. failed to visit the children for quite some time, and when she would occasionally visit the children, Holley noticed that the children "took a turn for the worst."

The foregoing evidence demonstrates that R.P. knowingly allowed A.P. and M.P. to be around Brooks, who allegedly sexually assaulted A.P., despite being informed by the Department that the children could not be around Brooks. *See In re O.E.R.*, 573 S.W.3d 896, 906 (Tex. App.—El Paso 2019, no pet.) (noting that a parent's choice to continue a relationship with a violent or abusive partner can create an endangering environment for children); *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards." (citation omitted)); *Jordan*, 325 S.W.3d at 724 (stating that evidence that a person has engaged in abusive or violent conduct in the past permits an inference that the person will continue to engage in violent behavior in the

future); *In re R.W.*, 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied) ("Accordingly, evidence of sexual abuse of one child is sufficient to support a finding of endangerment with respect to other children." (citations omitted)); *In re A.B.*, 125 S.W.3d 769, 775 (Tex. App.—Texarkana 2003, pet. denied) ("[S]exual abuse is conduct that endangers a child's physical or emotional well-being."); *In re W.S.*, 899 S.W.2d 772, 776-77 (Tex. App.—Fort Worth 1995, no writ) (noting that abusive or violent conduct by a parent or other resident of a child's home may produce an environment that endangers the physical or emotional well-being of a child). R.P. also left the children with B.N., a registered sex offender who also allegedly sexually abused A.P. This evidence shows a pattern of behavior where R.P. failed to adequately protect her children from abusive and endangering environments.

And although she initially claimed to believe A.P.'s allegation of sexual abuse against Brooks, R.P. later disbelieved A.P.'s allegation and pressured law enforcement to drop the sexual-assault charge against Brooks stemming from the allegation made by A.P. These actions can also be considered endangering conduct. *See K.M. v. Tex. Dep't of Family & Protective Servs.*, 388 S.W.3d 396, 399 (Tex. App.—El Paso 2012, no pet.) (concluding that a mother's disbelief and lack of support for a child sexual-abuse victim constituted endangering conduct); *see also In re C.M.*, No. 10-13-00080-CV, 2013 Tex. App. LEXIS 11116, at **9-10 (Tex. App.—Waco Aug. 29, 2013, no pet.) (mem. op.) (concluding that a parent engaged in endangering conduct because "Theresa was not supportive of

C.M. as a sexual abuse victim and did not believe that sexual abuse of C.M. or J.G. occurred. Theresa was emotionally abusive in trying to get C.M. to recant the allegation of abuse. Theresa was also unable to adequately protect the children from abuse").

Moreover, the evidence established that R.P. abuses drugs and missed several drug tests, both of which endanger the physical and emotional well-being of the children. *See In re J.O.A.*, 283 S.W.3d at 345 (noting that evidence of drug use may constitute evidence of endangerment); *see also In re G.M.*, 649 S.W.3d 801, 810 (Tex. App.—El Paso 2022, no pet.) ("A parent's illegal drug use and its effect on parenting ability may support the conclusion that a child's surroundings endanger her physical or emotional well-being." (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.))); *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied) (noting that it is reasonable for the factfinder to infer from a parent's failure to take a drug test that the parent was using drugs during the proceedings); *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc) (stating that continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and establishes an endangering course of conduct).

Furthermore, Holley's testimony showed that R.P. did not regularly participate in visitation. A parent's failure to regularly participate in visitation can reasonably be found to be emotionally endangering to the child's well-being. *See, e.g., In re L.S.*, No. 10-22-00119-CV, 2022 Tex. App. LEXIS 6332, at *6 (Tex. App.—Waco Aug. 24, 2022, no pet.)

(citing *In re A.F.*, No. 07-19-00435-CV, 2020 Tex. App. LEXIS 4152, at *17 (Tex. App.—Amarillo May 29, 2020, pet. denied) (mem. op.)).

Based on our review of the record under the appropriate standards for determining the legal and factual sufficiency of the evidence, we conclude that the evidence was legally and factually sufficient to support the trial court's finding R.P. engaged in conduct that endangered the physical and emotional well-being of A.P. and M.P. pursuant to section 161.001(b)(1)(E) of the Texas Family Code and that termination of R.P.'s parental rights to A.P. and M.P. is in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *see also In re J.O.A.*, 283 S.W.3d at 344-45; *In re J.F.C.*, 96 S.W.3d at 264-68; *In re J.F.-G.*, 612 S.W.3d at 381-82. And because we find that the evidence is sufficient under section 161.001(b)(1)(E), we have addressed the concerns of protecting R.P.'s due-process and due-course-of-law rights. *See In re N.G.*, 577 S.W.3d 230, 235-36 (Tex. 2019).

In addition, because only one predicate finding is necessary for the termination of parental rights, we need not address R.P.'s complaints regarding the predicate grounds under subsections (b)(1)(D) and (b)(1)(O). *See* TEX. R. APP. P. 47.1, 47.4.; *see also In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re J.S.S.*, 594 S.W.3d at 503. Accordingly, we overrule R.P.'s sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Johnson,
     and Justice Smith
Affirmed
Opinion delivered and filed March 1, 2023
[CV06]

