# Court of Appeals
## Tenth Appellate District of Texas

10-25-00467-CV

In the Interest of J.S.C. and J.M.C., Children

On appeal from the
335th District Court of Burleson County, Texas
Judge John Winkelmann, presiding
Trial Court Cause No. 31,409

CHIEF JUSTICE JOHNSON delivered the opinion of the Court.

## MEMORANDUM OPINION

Following a jury trial, Father's parental rights to J.S.C. and J.M.C. were terminated pursuant to Family Code subsection 161.001(b)(1)(D) and (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (b)(1)(E). The jury also found by clear and convincing evidence that termination was in the children's best interest. *See id.* at § 161.001(b)(2). In his sole issue, Father contends that the evidence was legally and factually insufficient to support the jury's findings that he committed the predicate grounds in subsections (D) and (E). We will affirm.

## A. Standard of Review

The standards of review for legal and factual sufficiency of the evidence in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.F.C.*, 96 S.W.3d 256, 264–68 (Tex. 2002) (legal sufficiency); *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002) (factual sufficiency). In a bench trial, the trial court, as factfinder, is the sole judge of the witnesses' credibility and demeanor. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009).

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department of Family and Protective Services (the Department) must establish by clear and convincing evidence two elements: (1) that the respondent parent committed one or more acts or omissions enumerated under subsection (b)(1), termed a predicate violation, and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.-G.*, 612 S.W.3d 373, 381 (Tex. App.—Waco 2020) (mem. op.), aff'd, 627 S.W.3d 304 (Tex. 2021). Proof of one element does not relieve the petitioner of the burden of proving the other. *J.F.-G.*, 612 S.W.3d at 381.

## B. Predicate Violations

In his sole issue, Father complains that the evidence was legally and factually insufficient for the jury to have found that he committed the predicate

grounds in Section 161.001(b)(1)(D) and (E). Specifically, Father argues that his rights should not have been terminated under the "endangerment provisions" when he did not know of the endangering conditions or endangering conduct by Mother. Father also argues that the Department did not present any evidence that he knowingly endangered the children through his own conduct.

Termination under subsection (E) requires clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. §161.001(b)(1)(E). To "endanger" means to expose the child to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The relevant inquiry under subsection (E) is whether sufficient evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied). However, it is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533. To determine whether termination is necessary, courts look to parental conduct both before and after the child's

birth. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied).

The children were initially removed from Mother's custody due to Mother's history with the department, concerns of drug use, neglectful supervision, and medical neglect. Mother had a history of drug use and CPS involvement with other children. Mother tested positive for amphetamines and methamphetamines and admitted to drug use while she was pregnant. Mother did not receive prenatal or post-natal care and gave birth to the children at home because she was afraid the Department would get involved due to her history of drug use and Department involvement with her other children. When asked about Mother's drug use while pregnant and while caring for young children, Father stated that he was unaware of it, but if he had known, he would not have done anything because he doesn't get involved in other people's business and that he would not have called CPS. If the endangering person is someone other than the appealing parent, then the parent generally must have known of the other person's endangering conduct. *T. D. v. Tex. Dep't of Family & Protective Services*, 683 S.W.3d 901, 913 (Tex. App.—Austin 2024, no pet.). However, scienter is not required for a parent's own acts to constitute endangerment under subsection (E). *See In re L.S.*, No.

10-22-00119-CV, 2022 WL 3655395, at *2 (Tex. App.—Waco Aug. 24, 2022, no pet.) (mem. op.).

Evidence of incarceration and its effect on a parent's ability to parent may establish an endangering course of conduct. *In re J.B.*, No. 02-22-00384-CV, 2023 WL 1859766, at *9 (Tex. App.—Fort Worth Feb. 9, 2023, pet. denied) (mem. op.). While imprisonment alone is not a basis to terminate a parent's rights, it is an appropriate factor to consider because when a parent is incarcerated, he or she is absent from the child's daily life and unable to provide support to the child, negatively impacting the child's living environment and emotional well-being. *In re M.R.J.M.*, 280 S.W.3d at 503; *In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021), reh'g denied (Sept. 3, 2021). A parent's lengthy absence from a child's life can be conduct that endangers the child's emotional well-being and a factfinder may infer that a parent's lack of contact with the child and absence from the child's life endangered the child's emotional well-being. *T.L. v. Tex. Dep't of Family & Protective Servs.*, No. 03-19- 00382-CV, 2019 WL 5779913, at *4 (Tex. App.—Austin Nov. 6, 2019, pet. denied). Father testified that he had been to prison on two previous occasions and that he was facing charges in two counties, one of which was a state jail felony for possession of a controlled substance, namely methamphetamine.

A parent's drug use both before and after a child's birth is relevant to the issue of endangerment. *Dupree v. Tex. Dep't of Protective and Regulatory Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). A history of drug abuse represents "conduct that subjects the children to a life of uncertainty and instability, thereby endangering their physical and emotional well-being." *In re A.B.*, 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied). A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *In re E.R.W.*, 528 S.W.3d 251, 264-65 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also In re C.V.L.*, 591 S.W.3d 734, 751 (Tex. App.—Dallas 2019, pet. denied). Father admitted to using methamphetamines in the past, including after the children were born and right before he was arrested five months before trial. Additionally, one of his pending charges was for possessing methamphetamine.

A parent's prolonged lack of contact with a child or absence from a child's life can also qualify as endangering conduct, as can a parent's failure to cooperate with the Department and failure to participate in court-ordered services. *In re J.S.H.*, No. 05-24-00159-CV, 2024 WL 2348187, at *3 (Tex. App.—Dallas May 23, 2024, no pet.). A court may consider a parent's failure

to complete a service plan as part of the endangering conduct analysis. *In re J.B.*, No. 02-22-00384-CV, 2023 WL 1859766, at *9 (Tex. App.—Fort Worth Feb. 9, 2023, pet. denied) (mem.op.) Furthermore, a factfinder could reasonably find a parent's failure to participate in visitation is emotionally endangering to the child's well-being. *In re A.F.*, No. 07-19-00435-CV, 2020 WL 2786940, at *7 (Tex. App.—Amarillo May 29, 2020, pet. denied) (mem.op.); *In re J.M.*, No. 12-11-00319-CV, 2013 WL 5657422, at *6-7 (Tex. App.—Tyler Oct. 16, 2013, pet. denied) (mem.op.). Prior to his arrest, Father did not try to arrange visitation with the children or cooperate in any other services with the Department because he had active arrest warrants. Once the Department was able to locate Father following his arrest, the Department made a service plan for Father that he could start while in jail and waiting on the DNA test results, but he declined to start any service plan until after the DNA test results were returned.

Father also argues that he should not be held liable for knowing conduct of omissions that occurred before he knew he was the children's father. He relies on *In re L.P.* to support his assertion that the specific knowledge requirements of Subsection (D) bar the court from considering evidence of Father's actions or inactions until after he gained knowledge of paternity with the DNA testing results. *In re L.P.*, No. 04-22-00015-CV, 2022 WL 2230926,

at *1 (Tex. App.—San Antonio June 22, 2022, no pet.). However, knowledge of paternity is not a prerequisite to a showing of a parent's own course of conduct which endangers a child under Subsection (E). *In re D.W.*, No. 10-09-00188-CV, 2009 WL 5155890, at *3 (Tex. App.—Waco Dec. 30, 2009, no pet.). Additionally, in certain situations, an alleged father cannot use a delay in adjudication of parentage that he created to defend against termination of his parental rights. *Interest of A.M.*, No. 05-21-00712-CV, 2022 WL 278972, at *4 (Tex. App.—Dallas Jan. 31, 2022, no pet.). Similar to *In re A.M.*, the evidence does not merely establish that Father impeded the Department's efforts to determine his parentage; rather, it shows he actively avoided the Department and the paternity determination. *Id* at *5. Here, Mother identified Father as the children's father when the Department first became involved, and no other possible father was identified. Father testified that he and Mother were in an on-again-off-again relationship. He stated that Mother told him the children were his and that he visited when the children were about two weeks old. He took photos with the children and stated that he began trying to help Mother financially, but he testified that he had doubts that the children were his. He did not pursue any paternity testing. When the Department became involved, attempts were made to locate Father, but the Department was ultimately unsuccessful. Eventually, the Department learned that Father had an

outstanding arrest warrant and served him by publication. Father testified that Mother told him about the Department's involvement and that the Department was looking for him to confirm paternity, but he did not reach out because he had an outstanding arrest warrant. The Department was not able to make contact with Father until after he was arrested. Father testified he would not have come forward or been at trial if he had not been arrested.

Considering all the evidence presented in this case in the light most favorable to the trial court's finding and considering the evidence as a whole, we conclude that the evidence was legally and factually sufficient to support termination of Father's parental rights under Subsection (E). *See* TEX. FAM. CODE ANN. § 161.001(b)(1). Because we find the evidence is legally and factually sufficient under Subsection (E), we do not need to address issues as to Subsections (D). Additionally, Father has not challenged the best interest of the children.

## D. Conclusion

Having overruled Father's sole issue, we affirm the trial court's order of termination.



_____

MATT JOHNSON
Chief Justice

OPINION DELIVERED and FILED:  May 21, 2026

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
CV06