NO. 07-12-00412-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

DECEMBER 11, 2012

_____

IN THE INTEREST OF R.M., C.C., C.C.,
P.C., A.C., B.C. AND K.C., CHILDREN

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 54,863-D; HONORABLE DON R. EMERSON, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Christy, appeals the trial court's order terminating her parental rights to five of her children, C.C., P.C., A.C., B.C., and K.C.[1] On appeal, Christy contends the evidence is insufficient to support the trial court's order of termination. We will affirm.

Factual and Procedural History

Following reports of domestic violence, drug use, and neglectful supervision, the Texas Department of Family and Protective Services (the "Department") began its

_____

[1] Throughout this opinion, appellant will be referred to as "Christy," and the children will be identified by their initials. See TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2012); TEX. R. APP. P. 9.8(b). The trial court also terminated the parental rights of the children's father, but he does not appeal the judgment.

investigation into the well-being of Christy's children and, in May 2008, took custody of Christy's seven children.[2]  Since that time, the Department has implemented family service plans and initiated various suits affecting the parent-child relationship between the children's parents and the children, and Christy has continued to test positive for drugs, remain unemployed, and either offer excuses or shift blame for the continued parental shortcomings she has demonstrated.

On May 3, 2010, following several years in which Christy and her children were involved with the Department, the Department filed its petition seeking the termination of Christy's parental rights and alleging a number of grounds for such termination.  The Department amended its petition on December 6, 2011, and the trial court held a hearing on the Department's allegations on June 26, 2012.  At the end of the hearing, the trial court granted the Department's petition seeking termination of Christy's parental rights.  More specifically, it found by clear and convincing evidence (1) that Christy had engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of the children, (2) that Christy failed to comply with provisions of a court order that specifically established the actions necessary for her to obtain the return of the children who had been in the

---

[2] Christy's parental rights to only five of those children are at issue in this appeal however.  Though R.M. and the elder C.C. are included in the style of the case, Christy's rights as to R.M. and the elder C.C. are not at issue.  As the trial court recognized, R.M. has reached the age of majority and is no longer in the Department's care.  We note, however, that the order of termination, while it does not address the parent-child relationship between Christy and R.M., does name the Department as R.M.'s permanent managing conservator.  The Department's petition explains that the elder C.C. was in custody of the Texas Youth Commission and his custody was not at issue.  The elder C.C. is not named in the order of termination.  So, we are left with the termination of Christy's rights as to the above-identified five children.

permanent or temporary managing conservatorship of the Department not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children, and (3) that termination of Christy's parental rights was in the children's best interest.  See TEX. FAM. CODE ANN. § 161.001 (West Supp. 2012).  The trial court signed its order of termination on August 28, 2012.

Christy contends on appeal from the trial court's order that the evidence was legally and factually insufficient to sustain the termination of her parent-child relationships with her five children.  She challenges the evidence of both the predicate act or omission and the best interest determination.  After having reviewed the record, we conclude that the evidence is sufficient as to both elements and will affirm.

Standards of Review

The natural right existing between parents and their children is of constitutional dimensions.  Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); see Santosky v. Kramer, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).  A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit.  Holick, 685 S.W.2d at 20.  That being so, we are required to strictly scrutinize termination proceedings.  In re G.M., 596 S.W.2d 846, 846 (Tex. 1980).  However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights.  In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).

3

The Texas Family Code permits a court to terminate the parent-child relationship if the petitioner establishes (1) one or more acts or omissions enumerated under section 161.001(1) and (2) that termination of the parent-child relationship is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001. Though evidence may be relevant to both elements, each element must be proved, and proof of one does not relieve the burden of proving the other. See In re C.H., 89 S.W.3d at 28. While both a statutory ground and best interest of the child must be proved, only one statutory ground is required to terminate parental rights under section 161.001. In re A.V., 113 S.W.3d 355, 362 (Tex. 2003). Therefore, we will affirm the trial court's order of termination if legally and factually sufficient evidence supports any one of the grounds found in the termination order, provided the record shows that it was also in the best interest of the child for the parent's rights to be terminated. See id.

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002); see TEX. FAM. CODE ANN. § 161.206(a) (West 2008). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. In re C.H., 89 S.W.3d at 26.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. See In re J.F.C., 96 S.W.3d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." Id. In other words, we will disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. Id.

When reviewing the factual sufficiency of the evidence supporting a termination order, we determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." In re C.H., 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. In re J.F.C., 96 S.W.3d at 266. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." Id.

Applicable Law and Analysis

Christy contends that the evidence is insufficient to support a finding of a predicate act or omission that would serve as grounds for terminating her parental rights to her five children. In response, the Department points to evidence that Christy engaged in drug use before and during the case and that she failed to regularly visit the children, characterizing such evidence as endangering conduct under subsection (E). See TEX. FAM. CODE ANN. § 161.001(1)(E). Christy also challenges the sufficiency of the evidence that would support the best interest determination. In support of the trial court's determination that termination of the parent-child relationship was in the children's best interest, the Department directs us to evidence, in addition to the aforementioned endangering conduct, that the children desired to be adopted, Christy has done nothing to avail herself of the services available to her, she has no concrete plans for the children should they be returned to her, and she has not altered her pattern of destructive behavior and instability.

Predicate act or omission

One of the grounds the trial court found as supporting termination of Christy's parental rights to the children was subsection (E)'s course-of-conduct endangerment of the physical or emotional well-being of the children. See id. "[E]ndanger" means "to expose to loss or injury; to jeopardize." Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). Although "'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers

6

injury." Id.; see In re P.E.W., 105 S.W.3d 771, 777 (Tex.App.—Amarillo 2003, no pet.) (observing that child "need not develop or succumb to a malady" in order to prove endangering conditions). In our review, we look not only at evidence regarding the parent's active conduct, but also evidence showing the parent's omissions or failures to act. In re A.B., 125 S.W.3d 769, 777 (Tex. App.—Texarkana 2003, pet. denied). The Texas Supreme Court has reiterated that endangering conduct is not limited to actions directed toward the child: "It necessarily follows that the endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage." In re J.O.A., 283 S.W.3d 336, 345 (Tex. 2009); see In re T.N., 180 S.W.3d 376, 383 (Tex.App.—Amarillo 2005, no pet.).

A parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct. In re J.O.A., 283 S.W.3d at 345. A parent's illegal drug use can support termination for endangerment because it exposes the child to the possibility that the parent may be impaired or imprisoned. Walker v. Tex. Dep't of Family & Protective Servs., 312 S.W.3d 608, 617 (Tex.App.—Houston [1st Dist.] 2009, pet. denied); see In re S.D., 980 S.W.2d 758, 763 (Tex.App.—San Antonio 1998, pet. denied) (characterizing continued drug use as conduct which "subjects a child to a life of uncertainty and instability").

The record in the case at bar contains evidence indicating that the drug abuse in the household was more than simply "remote and isolated incidents." See In re R.W., 129 S.W.3d 732, 741 (Tex.App.—Fort Worth 2004, pet. denied). Department caseworker Jessica Hoskins testified that Christy had submitted to three drug screens,

all of which yielded results showing she had used illegal drugs. Christy admitted that she tested positive for drugs during the initial phase of the investigation by the Department and multiple times during the pendency of the case. She admitted having last used methamphetamine during the month of January 2012, only months prior to the final hearing. However, she also acknowledged that she later tested positive for both methamphetamine and crack cocaine in March 2012. She claimed that she did not use crack cocaine and only tested positive for cocaine because she was around others who did use it. Christy admitted that she understood that staying free of drugs was an important factor in obtaining the return of her children but admitted, too, that she had tested positive for drugs in the years 2010, 2011, and 2012. Christy's history of admitted methamphetamine use and of drug screen results also indicating crack cocaine use represents conduct that subjects the children to a life of uncertainty and instability, thereby endangering their physical and emotional well-being. See In re A.B., 125 S.W.3d at 777; In re T.N., 180 S.W.3d at 383; In re S.D., 980 S.W.2d at 763. This remains so despite the absence of evidence that Christy's drug use actually injured any of the children. See Vasquez v. Tex. Dep't of Protective & Regulatory Servs., 190 S.W.3d 189, 196 (Tex.App.—Houston [1st Dist.] 2005, pet. denied).

Christy expressed a desire to work and a qualified desire to attend drug rehabilitation:

> And I had asked [Hoskins], when I had talked to her and everything, I had asked her, okay, could they send me to the rehab? She was supposed to [get] back in touch with me about that. She never did. Because that's what I want to do, I want to go to a rehab. But I don't need no rehab for no year or no two years. I want to go to rehab, you know what I'm saying, for two months.

8

Though Christy's testimony could be read as an expression of a desire—albeit one accompanied by a seemingly less-than-earnest effort—to behave more responsibly and attempt to free herself of drug abuse, the trial court, as finder of fact, was "not required to ignore a long history of dependency and destructive behavior merely because it allegedly abated before trial." In re R.W., 129 S.W.3d at 741 (citing In re M.G.D., 108 S.W.3d 508, 513 (Tex.App.—Houston [14th Dist.] 2003, pet. denied)); see In re J.O.A., 283 S.W.3d at 346.

Along with evidence of Christy's prolonged, unchecked drug abuse, the record suggests that Christy's attendance at the scheduled visits with her children was sporadic at best. By her own admission, when she did attend visits with the children, some visits went well, and others went poorly. She acknowledged that she failed to correct the disruptive and disrespectful behavior the children often exhibited at the visits and could offer no explanation for her failure to do so. She claimed that she always called when she was going to miss a visit, and the only reason she ever did miss a visit was due to a lack of transportation. She explained that the messages she left regarding her absences must never have been delivered to the caseworker. She denies that the Department offered her transportation so that she could attend the visits, and instead told of hardships in attending when she was dependent on busses or other people to give her a ride. Evidence of Christy's inconsistent participation in visitation with the children also support the trial court's finding that she engaged in conduct which endangered the children's physical or emotional well-being. Cf. In re U.P., 105 S.W.3d 222, 236 (Tex.App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g) (characterizing parent's absence as creating an "emotional vacuum" in child's life); see

also In re S.I.H., No. 02-11-00489-CV, 2012 Tex. App. LEXIS 2081, at *16 (Tex.App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op.) (noting evidence presented "that children thrive on consistency" and inconsistent visitation and lack of parental contact "can be very damaging").

In addition to Christy's failure, through her sporadic, chaotic visitation, to provide the children with consistency and security, Christy's prolonged history of unemployment and financial instability indicate an inability to provide for her five children, a relevant consideration in the trial court's finding of endangerment. See In re M.N.G., 147 S.W.3d 521, 538–39 (Tex.App.—Fort Worth 2004, pet. denied) (op. on reh'g); In re H.N.H., No. 02-11-00141-CV, 2012 Tex. App. LEXIS 326, at *69–71 (Tex.App.—Fort Worth Jan. 12, 2012, no pet.) (mem. op.). Christy testified that she had secured employment the week before the hearing and that she was planning to start her job in the next few days. She explained that her criminal record had prevented her from getting a job in the four-plus years in which the Department had cared for her children. She admitted that she really had done nothing in an effort to have the children returned to her.

Based on evidence that Christy continued to use drugs, failed to maintain consistent visitation or financial stability, and failed to make any discernible effort to improve her life in such a way that she might obtain the return of her children, the trial court could have formed a firm belief or conviction that Christy endangered the physical or emotional well-being of the children. We conclude that legally and factually sufficient evidence supports the trial court's finding of a predicate act or omission supporting termination of Christy's parental rights.

<u>Best Interest of the Children</u>

The Texas Supreme Court has recognized a non-exhaustive list of factors that are pertinent to the inquiry whether termination of parental rights is in the best interest of the child: (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. <u>See</u> <u>Holley v. Adams</u>, 544 S.W.2d 367, 371–72 (Tex. 1976); <u>see also</u> TEX. FAM. CODE ANN. § 263.307 (West 2008) (providing extensive list of factors that may be considered in determining child's best interest). In examining the best interest of the child, we may consider evidence that was also probative of the predicate act or omission. <u>See</u> <u>In re C.H.</u>, 89 S.W.3d at 28. The best interest determination may rely on direct or circumstantial evidence, subjective facts, and the totality of the evidence. <u>In re N.R.T.</u>, 338 S.W.3d 667, 677 (Tex.App.—Amarillo 2011, no. pet).

The Department need not prove all nine <u>Holley</u> factors, and the absence of evidence relevant to some of those factors does not bar a finding that termination is in the child's best interest, especially in the face of undisputed evidence that the parental relationship endangered the child. <u>See</u> <u>In re C.H.</u>, 89 S.W.3d at 27. No one <u>Holley</u>

11

factor is controlling, and evidence of one factor may be sufficient to support a finding that termination is in the child's best interest. In re A.P., 184 S.W.3d 410, 414 (Tex.App.—Dallas 2006, no pet.)

Here, the record reveals that the older children understand the concept of adoption and have expressed their desires to be adopted, even going so far as to ask their mother during visitation if they could be adopted. C.C. and P.C., the two oldest of these five children, also expressed to Hoskins that they wished for their younger siblings to be adopted so that the younger children would be able to get out of foster care.

The record suggests that Christy has demonstrated little to no skill in parenting. Most obviously, we note that her children have been in the Department's care since May 2008, a strong indication that Christy has demonstrated little skill in parenting. During those four years, the record reflects, Christy has been unemployed. She explained that only days before the hearing she was able to find employment, but she acknowledged that the job paid minimum wage for thirty hours a week and that she knew she would have to get another job, too. She has lived with her mother in an apartment for the past two and a half years, and she testified that, despite financial assistance from her cousin, she was unable to secure other living arrangements— presumably arrangements more accommodating to a household with five or more children. And, from her own testimony and from the positive drug screens over the years, it would appear that Christy's drug abuse has continued unabated.

By contrast, the Department identified adoption as the goal for the five remaining minor children. Though there are no definite prospective adoptive families for four of

the children, B.C. is in a foster home and thriving there. B.C. considers his foster parents "his mommy and daddy," and the family has expressed its intent to adopt him in the event Christy's rights are terminated.

Although the Department has in place various programs designed to help a parent situated similarly to Christy, it would appear that the Department has exhausted both the available programs it can offer and its willingness to expect Christy's full participation in any of those programs or her cooperation in general. Hoskins testified that the Department requested that Christy participate in parenting classes, individual therapy, psychological evaluation, visitation, and drug treatment. Christy did attend some therapy sessions and did attend some of the scheduled visits with the children, and she indicated some amount of desire to have the children back. However, the trial court was not required, in light of Christy's expressed desire to change, to ignore or discount her patterns of drug abuse and instability. See In re D.M., 58 S.W.3d 801, 813–14 (Tex.App.—Fort Worth 2001, no pet.).

When asked whether she had made effort over the years to regain custody of her children, Christy could offer very little to show that she had: "Just to be honest with you, last in the four and a half years, I really haven't because it [has] been real hard on me when they took my kids, and the service, you know what I'm saying?" She went on to explain that her criminal record prevented her from getting a job. The only really concrete or definite aspect of her plans for caring for the children involved leaving them in the Department's care while she had more time to get her life together. So, her plans

for the children were to permit the Department to continue to care for them until some uncertain point in the future.

Christy testified that she did tell all the children that she loved them and that she "hope[d] and pray[ed]" that her parental rights were not terminated. While we recognize the special bond between mother and child, we cannot permit that recognition or our own sentiment to override the best interest of these five children. See In re W.S.M., 107 S.W.3d 772, 773 (Tex. App.—Texarkana 2003, no pet.). The late Chief Justice William J. Cornelius observed:

> Although a child's love of his natural parents is a very important consideration in determining the best interests of the child, it cannot override or outweigh the overwhelming and undisputed evidence showing that the parents placed or allowed the child to remain in conditions, and engaged in conduct or placed the child with persons who engaged in conduct, which endangers the physical and emotional well-being of the child. The child's love of his parents cannot compensate for the lack of an opportunity to grow up in a normal and safe way equipped to live a normal, productive, and satisfying life.

Id.

Instead, a child's need for permanence is of paramount importance in evaluating his or her present and future emotional and physical needs. Dupree v. Tex. Dep't of Protective & Regulatory Servs., 907 S.W.2d 81, 87 (Tex.App.—Dallas 1995, no writ). Christy's plans for the children did not appear to be well-developed or planned. They, instead, appeared conditional and would happen, if at all, at an uncertain date in the future. Nevertheless, we are mindful that we are to focus, not on Christy's future plans and designs for the parent-child relationship, but whether termination of that relationship is in the best interest of the children. And the record before us supports the trial court's

finding that it is. We overrule Christy's challenge to the evidence supporting the trial court's finding regarding the children's best interest.

Having reviewed the record in the light most favorable to the trial court's findings, we conclude that a rational trier of fact could have reasonably formed a firm belief or conviction that (1) Christy engaged in conduct which endangered the physical or emotional well-being of her five children and (2) termination of Christy's parental rights was in the children's best interest. Likewise, viewing the evidence as a whole in a neutral light, a rational trier of fact reasonably could have arrived at the same firm belief or conviction. We conclude that the evidence is legally and factually sufficient to support the trial court's order terminating Christy's parental rights to her five children and, accordingly, overrule her sole point of error.

Conclusion

Having overruled the sole issue Christy has presented to this Court, we affirm the trial court's order terminating Christy's parental rights to C.C., P.C., A.C., B.C., and K.C.


Mackey K. Hancock
Justice


15