

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00317-CV

IN THE INTEREST OF L.E., Z.S.A.-F. AKA Z.A., AND K.A., CHILDREN

On Appeal from the 242nd District Court
Hale County, Texas
Trial Court No. B41701-1708; Honorable Kregg Hukill, Presiding

January 3, 2020

## MEMORANDUM OPINION

Before PIRTLE, PARKER, and DOSS, JJ.

Appellant, the thirty-nine-year-old mother of eight-year-old L.E., six-year-old Z.S.A.-F., and five-year-old K.A., appeals from the trial court's order terminating her parental rights to her three children.[1]  She challenges the trial court's order through five issues, three challenging the sufficiency of the evidence to support the trial court's findings under the predicate grounds, one challenging the sufficiency of the evidence to

---

[1] To protect the privacy of the parties involved, we refer to the mother as "the mother" and to the children by their initials.  See TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2019); TEX. R. APP. P. 9.8(b). The parental rights of the fathers of Z.S.A.-F and K.A. were also terminated in this proceeding.  They have not filed a notice of appeal.  The hearing regarding the parental rights of L.E.'s father was continued to a future date and his rights are not at issue in this appeal.

support the trial court's finding that termination was in the children's best interests, and one arguing the trial court abused its discretion by refusing to extend the dismissal date in this case. We affirm the order of the trial court.

## BACKGROUND

In July 2017, the Texas Department of Family and Protective Services received a report concerning domestic violence between the mother and her boyfriend. Both admitted to long-term domestic violence and illicit drug use. At the time of the final hearing, L.E. was placed in one foster home and Z.S.A.-F. and K.A. were placed together in another.

After receiving the report, the Department filed pleadings including an original petition for protection of a child, for conservatorship, and for termination in suit affecting the parent-child relationship and obtained an order for protection of a child in an emergency. A service plan that included tasks the mother was required to perform to secure the return of her children to her care was also put in place. The mother completed some of the services and a monitored return service plan was given to the mother in January 2019. The monitored placement was disrupted when the mother tested positive for cocaine about a month after the children were returned to her care. The mother denied use but did not appear for a test in March 2019. A week later, the mother tested positive for alcohol. The children were removed and the next day, the mother was arrested for an alleged assault that took place in public while she was intoxicated. The Department requested additional services for the mother, but the mother failed to attend the required drug and alcohol assessment and only attended one counseling session.

2

A final hearing was held in August 2019, just days before the statutory deadline was to expire.[2] At the outset of the hearing, counsel for the mother asked the court for a continuance to allow the mother to complete the SAFP program that was part of the Department plan as well as the terms of the community supervision imposed by another court. The trial court denied that request. At the final hearing, the Department presented three witnesses to provide evidence to support its alleged grounds for termination of the mother's parental rights. Most significant of that evidence was evidence of the mother's drug and alcohol use.

After hearing the evidence presented and the arguments of counsel, the trial court found clear and convincing evidence supported termination of the mother's parental rights to her three children under Family Code section 161.001(b)(1) (D), (E), and (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) (West Supp. 2019). It also found clear and convincing evidence to support a finding that termination was in the children's best interests. TEX. FAM. CODE ANN. § 161.001(b)(2).

**ANALYSIS**

**APPLICABLE LAW**

The Texas Family Code permits a court to terminate the parent-child relationship if the Department establishes one or more acts or omissions enumerated under section 161.001(b)(1) and termination of that relationship is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2). *See also Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). The burden of proof is by clear and convincing evidence. TEX. FAM. CODE

---

[2] *See* TEX. FAM. CODE ANN. § 263.401 (West 2019) (providing for dismissal after one year and requirements to obtain extension of time).

ANN. § 161.206(a-1) (West Supp. 2019). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2019).

Only one statutory ground is needed to support termination. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied). Notwithstanding this point, the Texas Supreme Court has recently instructed appellate courts that due process requires a heightened standard of review under section 161.001(b)(1)(D) or (E), even when another ground for termination is sufficient, because of the potential collateral consequences to an appellant's parental rights concerning another child. *See In re N.G.,* 577 S.W.3d 230, 237 (Tex. 2019) (per curiam). The Court held that because section 161.001(b)(1)(M) provides for the termination of parental rights if there is clear and convincing evidence that the parent has had his or her parental rights terminated with respect to another child based on a finding that his or her conduct violated subsection (D) or (E), an appellate court denies an appellant a "meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children" if that court does not review a termination based upon either of those subsections. *Id.* at 235 (citing *In re S.K.A.*, 236 S.W.3d 875, 890 (Tex. App.—Texarkana 2007, pet. denied)).

Furthermore, in addition to a finding on the predicate grounds for termination, the trial court must also find that termination is in the children's best interests. *Id.* In reviewing a termination proceeding, the standard for sufficiency of evidence is that discussed in *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). In reviewing a best interest finding,

4

appellate courts consider, among other evidence, the factors set forth in *Holley*, 544 S.W.2d at 371-72.

Subsection (D) permits termination when clear and convincing evidence shows that the parent knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). This subsection requires a showing that the environment in which the child was placed posed a danger to the child's physical or emotional health, and it permits termination based on a single act or omission by the parent. *In re J.A.S.*, No. 07-12-00150-CV, 2012 Tex. App. LEXIS 8087, at *14 (Tex. App.—Amarillo Sept. 25, 2012, no pet.) (mem. op.) (citing *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied)). Subsection (D) concerns the child's living environment, rather than the parent's conduct, though parental conduct may produce an endangering environment. *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). It is not necessary that the child's living environment directly threaten the child or that the child be injured. What is significant is that the parent must be aware of the potential for danger to the child in such an environment and must have disregarded that risk. *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Illegal drug use and criminal activity support a conclusion that the child's surroundings endanger his or her physical or emotional well-being. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). The relevant time frame under this subsection is prior to the child's removal. *In re O.R.F.*, 417 S.W.3d 24, 37 (Tex. App.—Texarkana 2013, pet. denied).

Subsection (E) permits termination when clear and convincing evidence shows that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the child's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E). The relevant inquiry here is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d at 125. Termination under subsection (E) must be based on more than a single act or omission. *Id.* A voluntary, deliberate, and conscious course of conduct by a parent is required. *Id.* Thus, while both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re S.M.L.*, 171 S.W.3d at 477. To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child nor is the child required to suffer actual injury. *Texas Dep't of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (reversing appellate court's holding that father's imprisonment did not endanger the emotional and physical well-being of a child).

### SUFFICIENCY OF EVIDENCE TO SUPPORT PREDICATE GROUNDS

Here, the mother testified at the final hearing, admitting to her drug and alcohol use. She also admitted to instances of domestic violence and other issues with her boyfriend. She admitted her boyfriend assaulted her by "backhand[ing] me in my mouth" after the children were removed from her care a second time. She also told the court she used drugs and alcohol during the pendency of the case as a way of grieving for her son who died while in foster care. Domestic violence and drug use are circumstances a trial court can consider as endangering a child under subsection (D) and (E). *In re K.A.F.*, No.

6

05-12-01582-CV, 2013 Tex. App. LEXIS 7350, at *33-34 (Tex. App.—Dallas June 14, 2013, no pet.) (mem. op.).

The mother further told the court she had been placed on community supervision and that one of the terms of her supervision was her temporary confinement in a SAFP facility. She acknowledged she would spend approximately six months in that program and likely two to three additional months at a halfway house. Many courts have noted that a parent's ongoing drug use is conduct that subjects a child to a life of uncertainty and instability, which endangers the physical and emotional well-being of the child. *See In re K.A.S.*, No. 07-12-00234-CV, 2012 Tex. App. LEXIS 8725, at *16-17 (Tex. App.— Amarillo Oct. 18, 2012, no pet.) (mem. op.); *In re A.B.*, 125 S.W.3d 769, 777 (Tex. App.— Texarkana 2003, pet. denied) ("Drug use and its effect on a parent's life and ability to parent may establish an endangering course of conduct."). "A parent's continued drug use demonstrates an inability to provide for the child's emotional and physical needs and to provide a stable environment for the child." *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied) (citing *In re F.A.R.*, No. 11-04-00014-CV, 2005 Tex. App. LEXIS 234, at *4 (Tex. App.—Eastland Jan. 13, 2005, no pet.) (mem. op.)). In this case, the trial court could have been persuaded that the mother's drug use and history of domestic violence was sufficient to establish the predicate grounds set forth under sections 161.001(b)(1)(D) and (E) of the Texas Family Code.

Additionally, the trial court could have seen the mother's failure to complete additional requirements of her service plan as part of the endangering conduct analysis under subsection (E). *In re X.S.*, No. 07-17-00422-CV, 2018 Tex. App. LEXIS, at *9-10 (Tex. App.—Amarillo April 18, 2018, no pet.) (mem. op.); *Robinson v. Tex. Dep't of*

7

*Protective & Regulatory Servs.*, 89 S.W.3d 679, 686-87 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A Department caseworker, Samantha Yancey, testified the children were removed due to concerns over domestic violence and drug use by the mother and her boyfriend. Yancey told the court that the mother's oldest child unexpectedly passed away during the pendency of the case. The Department offered to the mother grief counseling to help her cope with the loss. After the mother had made sufficient progress, the children were returned to her care under a monitored plan. As part of that plan, the mother was subject to four continuing required services. She was required to comply with the terms of her community supervision, to maintain employment, to maintain appropriate housing, and to submit to random drug tests. The caseworker testified the mother tested positive for cocaine on February 21, 2019. The mother failed to appear for subsequent tests; however, she did appear for the tests on March 14. This time the laboratory also tested the sample to ascertain the mother's blood alcohol level.

Yancy testified that after the positive tests for cocaine and alcohol use and the mother's admission that she had used both, the Department added requirements to her reunification plan. Those additional requirements included her submission to a new drug and alcohol assessment, re-engagement in individual counseling, and following recommendations from either of those services. Yancey told the court the mother missed one appointment for the drug and alcohol assessment and failed to schedule another and that she attended one individual counseling session after the children were removed from her care under the monitored plan. From Yancey's testimony, the trial court could have found sufficient evidence to support a finding that the mother's rights should be terminated under section 161.001(b)(1)(D) and (E).

8

The trial court also had before it the testimony of Sharon Hensley, a licensed professional counselor who engaged in therapy with Z.F.A.-F. and K.A. She testified that the boys told her their mother fought with other people. They told her about their grandmother being mad at their mother and fighting and "bad words from everybody. Uncle V. using the middle finger at Mom . . . ." After K.A. called his foster mother a "motherf**king b*tch," Hensley asked him where he heard those words. He responded that his "mother yelled them at the police." Hensley told the court that "the trauma [the boys] described to me is damaging." This again is evidence from which the trial court could have found the mother engaged in endangering behavior or conduct or placed her children in endangering circumstances.

Viewing the evidence before us as a whole under the requisite standards, we find sufficient clear and convincing evidence to support the trial court's finding that the mother engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the physical or emotional well-being of her children.

Accordingly, we overrule the mother's first three issues.

### BEST INTEREST

In addition to the finding of at least one predicate ground for termination, the Department was also required to prove by clear and convincing evidence that termination of the mother's rights was in her children's best interests. TEX. FAM. CODE ANN. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable fact finder could have formed a firm belief or conviction that termination of the mother's parental rights was

9

in the children's best interests can we conclude the evidence is insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In our evaluation of a child's best interest, there is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* TEX. FAM. CODE ANN. § 263.307(a) (West 2019). Section 263.307(b) provides a non-exhaustive list of factors to consider in deciding best interest. Similarly, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371-72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* Importantly, the absence of evidence about one or more of these considerations does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27; *In re A.C.,* 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re*

*C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

Significant here is the mother's continued drug use, even after the monitored return of her children, and her reliance on alcohol. Furthermore, the volatile relationship with her boyfriend led to an unstable environment for her children.

The witnesses testified the children were bonded to their mother, that she loves the children, and they love her. While the children indicated they wanted to live with their mother, Hensley told the court the children "just wanted out of foster care." The mother attended her visits with her children and the visits went well; however, according to Hensley, K.A.'s behavior was better when he had breaks from seeing his mother. Out of the three children, K.A.'s behavior was the most problematic. He had been expelled from school as a result of behavioral issues. The counselor testified Z.S.A.-F. and K.A. were participating in trauma therapy due to the domestic violence they had seen.

The caseworker, Yancey, testified to the effects of the mother's visitation with the children on K.A. She said K.A. showed agitation after the visits and would engage in inappropriate behavior such as "smear[ing] feces on the bathroom walls . . . curs[ing] at the faster [sic] mother . . . and damag[ing] property." She also told the court that K.A.

"physically attacked me after a visit and we had to call the police on one occurrence. He also attacked the police officer at that time. And it takes several days for him to kind of reel things back in and get back to a normalcy." Yancey said these behaviors were worse after the children were removed the second time.

At the time of the final hearing, the Department was working toward placement of all three children with Z.S.A.-F.'s paternal grandmother. She lived in Colorado and the Department was waiting on approval from that state. The grandmother was wiling to adopt all three children, even though L.E. and K.A. were not her biological grandchildren. The caseworker and counselor told the court the children appeared excited about the possibility of going to live with the grandmother. The mother, however, expressed some concern because she said her children did not want to move so far away. And, the mother was worried that L.E. and K.A. would be treated differently because they were not biologically related to Z.S.A.-F.'s grandmother.

As for the mother's plans, the record showed she completed many of her services, was employed, and had suitable housing for the children. All she requested was additional time to complete SAFP.

Both the attorney ad litem for the children and the mother's attorney told the court they did not recommend termination of the mother's parental rights. The trial court noted the statutory time period was about to expire and told the mother that extending that time for nine to eighteen months was not just merely bending the rule, but "bending it a whole lot." The court went on to say that extending the case for that period of time was not, in its opinion, "what the legislature intended."

Despite some evidence to the contrary, viewing the evidence in the light most favorable to the judgment for our legal-sufficiency analysis and all of the evidence equally for our factual-sufficiency analysis, we are led to a conclusion that a reasonable fact finder could have formed a firm belief or conviction that termination of the mother's parental rights was in the children's best interests. *See* TEX. FAM. CODE ANN. § 161.001(b)(2).

### REFUSAL OF COURT TO EXTEND DISMISSAL DATE

At the final hearing, counsel for the mother repeated the mother's request that the court extend the dismissal date for the case under section 263.401 of the Family Code. TEX. FAM. CODE ANN. § 263.401. As grounds for that request, counsel reminded the court that the mother had complied with her service plan, resulting in the return of her children to her care. While the children were later removed when the mother relapsed, counsel noted that she continued to participate in the court-ordered services in her reunification plan. At the time of the final hearing, the mother was awaiting transport to a drug treatment facility, something required by both her community supervison order and her reunification plan. Counsel requested extension of the dismissal date to permit the mother to complete her treatment.

This court reviews the trial court's grant or denial of a motion pursuant to section 263.401 under an abuse of discretion standard. *In re D.S.*, 455 S.W.3d 750, 751 (Tex. App.—Amarillo 2015, no pet.); *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied) (en banc). Under an abuse of discretion standard, an appellate court may reverse the trial court's ruling only if the trial court acted without reference to any guiding rules and principles, such that its ruling is arbitrary and unreasonable. *In re E.F.*, No. 07-18-00281-CV, 2018 Tex. App. LEXIS 8389, at *2 (Tex. App.—Amarillo Oct. 15,

13

2018, pet. denied) (mem. op.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985), 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986)).

Pursuant to section 263.401, a trial court must dismiss a suit brought by the Department if trial has not commenced by the mandatory dismissal date unless an extension has been granted under section 263.401(b). Tex. Fam. Code Ann. § 263. 401. The trial court is permitted to extend the dismissal deadline if the movant shows "extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child." *In re E.F.*, 2018 Tex. App. LEXIS 8389, at *3 (citing Tex. Fam. Code. Ann. § 263.401(b)). "The focus is on the needs of the child, whether extraordinary circumstances necessitate the child remaining in the temporary custody of the Department, and whether continuing such is in the best interest of the child." *Id.* (citing *In re A.J.M.*, 375 S.W.3d at 604). Actions that are "'considered to be the parent's fault' will generally not constitute an extraordinary circumstance." *Id.* (citing *In re O.R.F.*, 417 S.W.3d at 42). While a trial court has discretion to grant an extension, the language in section 263.401 "prefers finality to suit." *In re A.J.M.*, 375 S.W.3d at 605.

The record before us shows the trial court extended the dismissal date three times. The first was on July 27, 2018, when it entered an order to retain the case pursuant to section 263.401(b) of the Family Code. *See* Tex. Fam. Code Ann. § 263.401(b). The second was when it entered an order for a monitored placement of the children with the mother pursuant to section 263.403(a) and (b) of the Family Code on January 25, 2019. *See* Tex. Fam. Code Ann. § 263.403(a), (b). The third occurred on March 5, 2019, when

14

the trial court entered an order to return the children to foster care.[3]  *See* TEX. FAM. CODE ANN. § 263.403(c).

Consequently, this case remained pending on the trial court's docket for over two years.  During that time, the children were placed in foster care, returned to their mother's care, then re-removed after she again used cocaine and alcohol.  By the time of the final hearing, the mother had been arrested for assault and, as part of her court-ordered community supervision, she was required to attend SAFP.  The time during which she would be in the program, followed by the time required for her to be in a halfway house, and the time after her release that would be required for her to participate in services to secure the return of her children, is significant.  The mother's request that the trial court grant an extension of time under section 263.401 for an indeterminate period of time was a request that the court extend the time for disposition well beyond what the Legislature seemingly intended when it implemented those timelines.  Furthermore, section 263.402 specifically precludes parties from extending deadlines by agreement.  *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 643 (2009) (citing TEX. FAM. CODE ANN. § 263.402).  As such, the mother did not present any persuasive evidence that such an indeterminate delay was in the best interests of her children.  *See, e.g., In re J.S.S.*, No. 10-19-00102-CV, 2019 Tex. App. LEXIS 8585, at *10 (Tex. App.—Waco Sept. 18, 2019, no pet.) (mem. op.) (citing *In re E.F.*, 2018 Tex. App. LEXIS 8389, at *4-5; *In re L.T.*, No. 02-10-00094-CV, 2011 Tex. App. LEXIS 1313 (Tex. App.—Fort Worth Feb. 17, 2011, no pet.) (mem. op.)).

---

[3] The trial court signed a *Nunc Pro Tunc Order Returning Children to Care* on April 2, 2019, to correct the omission in the March 2019 order of the new dismissal date and subsequent hearing dates.

We find the trial court did not abuse its discretion in denying the mother's request for an additional extension under section 263.401 and overrule the mother's final issue.

**CONCLUSION**

Having resolved each of the mother's issues against her, we affirm the order of the trial court.

Patrick A. Pirtle
Justice