

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-24-00185-CV

**IN THE INTEREST OF T.D.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-00958
Honorable Kevin Henderson, Judge Presiding

Opinion by:   Irene Rios, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: September 13, 2024

AFFIRMED

Appellant Father appeals the trial court's order terminating his parental rights to his child, T.D.[1]  In his first issue, Father argues the trial court erred by not rendering the termination order within ninety days of the date the trial commenced.  In his second through fifth issues, Father challenges the sufficiency of the evidence supporting termination of his parental rights under each statutory ground: (D), (E), (N), and (O).  In his sixth issue, Father challenges the sufficiency of the evidence supporting the trial court's finding that termination was in the child's best interest.  We affirm.

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the parents as "Father" and "Mother" and we refer to the children using their initials or as "the children."  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).  We also refer to T.D. as "the child."

BACKGROUND

Mother has three children: W.H., N.H., and T.D.  Only T.D. is the subject of this appeal and is Father's biological child.  The Department became involved in the underlying case when T.D.'s older half-sibling, N.H., made an outcry that she was being sexually abused by Father.

On May 6, 2022, the Department filed a petition seeking termination of Father's parental rights.  The trial court held a three-day bench trial on October 24, 2023, January 26, 2024, and February 16, 2024.  The trial court heard testimony from: Father; T.D.'s paternal grandfather ("Grandfather"); T.D.'s paternal grandmother ("Grandmother"); Carolina Coronado, the Department's caseworker; and the children's maternal aunt ("Aunt").[2]

On March 1, 2024, the trial court signed an order terminating Father's parental rights to T.D.[3]  The trial court terminated Father's parental rights based on statutory grounds (D), (E), (N), and (O) in subsection 161.001(b)(1) of the Texas Family Code.  *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (N), (O).  The trial court also found it was in the child's best interest to terminate Father's parental rights.  *See id.* § 161.001(b)(2).  Father appeals.

STATUTORY REQUIREMENTS AND STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001(b).  Clear and convincing evidence requires "proof that will

---

[2] To protect the identity of minor children, we refer to T.D.'s paternal grandparents as "Grandfather" and "Grandmother," and to W.H. and N.H.'s maternal aunt as "Aunt."  We refer to Grandmother and Grandfather collectively as the "grandparents."

[3] The other parties to the suit entered into an agreement regarding rights to the children that was incorporated into the trial court's final order.

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007.

When reviewing the sufficiency of the evidence, we apply well-established standards of review. *See id.* §§ 101.007, 161.206(a); *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review).

"In reviewing the legal sufficiency of the evidence to support the termination of parental rights, we must 'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.B.*, No. 04-17-00364-CV, 2017 WL 4942855, at *2 (Tex. App.—San Antonio Nov. 1, 2017, pet. denied) (mem. op.) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *J.F.C.*, 96 S.W.3d at 266. "A corollary to this requirement is that a [reviewing] court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

"In reviewing the factual sufficiency of the evidence to support the termination of parental rights, we 'must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.'" *J.L.B.*, 2017 WL 4942855, at *2 (quoting *J.F.C.*, 96 S.W.3d at 266). "A [reviewing court] should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *J.F.C.*, 96 S.W.3d at 266. "The [reviewing] court must hold the evidence to be factually insufficient if, in light of the entire record, the disputed evidence contrary to the judgment is so significant that a reasonable factfinder could not have resolved that disputed evidence in favor of the ultimate

finding." *In re M.T.C.*, No. 04-16-00548-CV, 2017 WL 603634, at *2 (Tex. App.—San Antonio Feb. 15, 2017, no pet.) (mem. op.).

Further, in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations and judgment regarding credibility. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

### DISCUSSION

In his first issue, Father argues the trial court was required to render its termination order within ninety days of the date the trial commenced pursuant to section 263.4011 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 263.4011. Because the trial court did not render its final order within ninety days of the date the trial commenced, Father argues he is entitled to a new trial. In his second through fifth issues, Father argues the evidence is legally and factually insufficient to support each of the statutory grounds for termination. In his sixth issue, Father argues the evidence is legally and factually insufficient to support the trial court's best interest finding. We address Father's sufficiency issues first.

**STATUTORY GROUNDS FOR TERMINATION**

Only one predicate ground finding under section 161.001(b)(1) is necessary to support a termination judgment when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Therefore, our analysis is usually complete if we conclude that the evidence is sufficient to support any single predicate ground. Because the findings under subsection 161.001(b)(1)(D) and (E) have consequences for termination of parental rights as to other children, termination on these grounds implicates significant due process concerns for Father. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (M); *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019). Due process requires us to review the trial court's findings under both subsections 161.001(b)(1)(D) and (E) of the Texas Family Code. *See N.G.*, 577 S.W.3d at 235–36; *see also In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022) ("[W]e may not bypass Father's evidentiary challenges to [s]ubsections (D) and (E) . . . because termination of a parent's rights under either can serve as a ground for termination of his rights to *another* child.").

Here, the trial court found evidence Father "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child . . . [and] engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child . . . ." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). To endanger a child under subsections (D) and (E) means to expose the child to loss or injury or to jeopardize the child's emotional or physical health. *See J.W.*, 645 S.W.3d at 748; *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "Although endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it does not require that there be conduct directed at the child or that the child actually suffer injury." *J.W.*, 645 S.W.3d at 748 (internal quotation marks and alterations omitted).

While both subsections (D) and (E) focus on endangerment, they differ regarding the source and proof of endangerment. *In re A.B.R.*, No. 04-19-00631-CV, 2020 WL 1159043, at \*2 (Tex. App.—San Antonio Mar. 11, 2020, pet. denied) (mem. op.). Subsection (D) concerns the child's living environment, rather than the conduct of the parent, though parental conduct is certainly relevant to the child's environment. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). Under subsection (E), the cause of the endangerment must be the parent's conduct and must be the result of a conscious course of conduct rather than a single act or omission. *Id.*

### 1. *Statutory Subsection (D)*

Subsection (D) allows for termination of parental rights if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). The child's "environment" encompasses the suitability of the child's living conditions and the conduct of parents or others in the home. *S.R.*, 452 S.W.3d at 360. "Inappropriate, abusive, or unlawful conduct by a parent or other persons who live in the child's home can create an environment that endangers the physical and emotional well-being of a child as required for termination under subsection (D)." *Id.* "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.). Subsection (D) permits termination based upon only a single act or omission. *In re R.D.*, 955 S.W.2d 364, 367 (Tex. App.—San Antonio 1997, pet. denied).

Under Subsection (D), the trial court examines "evidence related to the environment of the child[] to determine if the environment was the source of endangerment to the [child's] physical or emotional well-being." *J.T.G.*, 121 S.W.3d at 125. Parental conduct, however, is a factor that contributes to the child's environment. *Id.* The time period relevant to a review of conduct and

environment under statutory ground (D) is prior to the child's removal. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A court may infer that sexual abuse of a child in the home is conduct that creates an endangering environment for other children in the household who may either discover the abuse or be abused themselves. *See In re E.A.G.*, 373 S.W.3d 129, 143 (Tex. App.—San Antonio 2012, pet. denied).

### 2. *Statutory Subsection (E)*

Subsection (E) permits termination if the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). The trial court must determine "whether evidence exists that the endangerment of the child's physical well-being was the direct result of [the parent's] conduct, including acts, omissions, or failures to act." *In re M.E.-M.N.*, 342 S.W.3d 254, 262 (Tex. App.—Fort Worth 2011, pet. denied). "Courts may further consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after he was removed from a parent's care." *A.B.R.*, 2020 WL 1159043, at *3. "[E]ndangering conduct is not limited to actions directed towards the child." *J.OA.*, 283 S.W.3d at 345. "It is beyond question that sexual abuse is conduct that endangers a child's physical or emotional well-being . . . ." *In re T.D.S.*, No. 13-15-00107-CV, 2015 WL 5110472, at *19 (Tex. App.—Corpus Christi–Edinburg Aug. 28, 2015, no pet.) (mem. op.) (quoting *In re A.B.*, 125 S.W.3d 769, 775 (Tex. App.—Texarkana 2003, pet. denied)). "Moreover, previous sexual abuse of a child endangers any children the abuser has or may have in the future." *In re K.K.D.B.*, No. 14-17-00302-CV, 2017 WL 4440546, at *7 (Tex. App.—Houston [14th Dist.] Oct. 5, 2017, pet. denied) (mem. op.); *see also In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("Evidence of sexual abuse of another child, coupled with a present or future danger

to the child in question, is also relevant to determine whether a parent has engaged in an endangering course of conduct, even if the abuse occurred prior to the birth of the subject child.").

### 3. *Analysis*

Because the same evidence relates to subsections (D) and (E), we combine our analysis of these predicate grounds for termination. *See A.B.R.*, 2020 WL 1159043, at *3 (citing *J.T.G.*, 121 S.W.3d at 126).

Here, the trial court heard testimony that Father sexually abused his stepdaughter, N.H., and another child. Witnesses testified that N.H.'s allegations have been consistent. The trial court also heard testimony Father was filming the sexual interaction, thereby increasing the chance that T.D. may discover the sexual abuse even if T.D. was not abused herself. *See E.A.G.*, 373 S.W.3d at 143. During trial, Father was confined and awaiting his criminal trial. He faced up to a ninety-nine-year sentence if convicted of the continuous sexual assault of a child. *See In re J.F.-G.*, 627 S.W.3d 304, 313 (Tex. 2021) (internal quotation marks omitted) ("[I]ncarceration does support an endangerment finding if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child.").

When Father took the stand, the Department asked him several questions regarding the alleged sexual abuse. Father invoked his Fifth Amendment right against self-incrimination to the following questions:

- "[I]sn't it true that you are being held for continuous sexual abuse of a child?"

- "Isn't it true . . . that you are also pending [f]ederal charges for production of child pornography?"

- "Isn't it true . . . that the continuous sexual abuse of a child as well as the child pornography involves your stepdaughter, [N.H.]?"

- "Isn't it true . . . this case involves you having intercourse with [N.H.]?"

- "Isn't it true this case also relates to you videotaping the incidents where you had intercourse with [N.H.]?"

- "[W]as there also another child that was not your stepdaughter that was involved in these incidents of sexual abuse?"

- "Did you not also tell or threaten [N.H.] that if she did not engage in sexual intercourse that you would harm or kill this other child?"

The Department asked the trial court to draw negative inferences from Father's invocation of the Fifth Amendment. The trial court acknowledged it was permitted to draw negative inferences under such circumstances. *See In re A.R.P.*, No. 04-23-00668-CV, 2024 WL 251957, at *2 (Tex. App.—San Antonio Jan. 24, 2024, no pet.) (mem. op.) (holding the factfinder is free to draw a negative inference when a parent invokes his Fifth Amendment right against self-incrimination to specific questions); *In re G.V.S.*, No. 04-18-00563-CV, 2018 WL 6624398, at *3 (Tex. App.—San Antonio Dec. 19, 2018, pet. denied) (mem. op.) ("The Fifth Amendment . . . does not forbid adverse inferences against witnesses in civil actions [and] the trial court, as the fact finder, was free to draw negative inferences regarding Father's criminal history based on his refusal to answer questions relating to those issues."); *see also In re D.J.R.*, No. 04-23-00568-CV, 2023 WL 8246666, at *5 (Tex. App.—San Antonio Nov. 29, 2023, no pet.) (mem. op.) ("Although parental rights are constitutional in nature, a termination proceeding is a civil proceeding for purposes of the privilege against self-incrimination.").

Father also acknowledged he was involved in a prior case pertaining to N.H. and W.H. Father again invoked his Fifth Amendment right against self-incrimination when asked whether that case involved physical abuse of one of the children in Father's care. Again, the trial court was permitted to draw a negative inference from Father's invocation of his Fifth Amendment right against self-incrimination. Coronado testified there was a 2019 case involving the Department where Father admitted to emotionally and physically abusing another child.

Father essentially argues in his brief that the evidence is insufficient to support termination of his parental rights to T.D. because there is no evidence that he engaged in any abusive conduct towards T.D. Father fails to recognize that endangering conduct need not be directed at the child to whom his rights are being terminated. "It is not necessary that the parent's conduct be directed at the child or that the child actually be injured; rather, a child is endangered when the environment or the parent's course of conduct creates a potential for danger which the parent is aware of but disregards." *In re R.S.-T.*, 522 S.W.3d at 110. "Abusive conduct by a parent in the home may produce an environment that endangers the physical or emotional well-being of a child in the home." *E.A.G.*, 373 S.W.3d at 143. "Thus, a parent's abuse of other children in the home can support a finding of endangerment." *Id.*

The evidence regarding Father's sexual abuse of N.H.—and the negative inferences the trial court was permitted to draw from Father's decision to invoke his Fifth Amendment right against self-incrimination in response to questions regarding the sexual abuse—supports the trial court's conclusion that Father's conduct endangered T.D. and that Father's conduct created conditions or surroundings that endangered T.D. Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that Father "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child . . . [and] engaged in conduct . . . which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E); *see also H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's subsection (D) and (E) findings.

Having determined the evidence is legally and factually sufficient to support the trial court's finding on subsections (D) and (E), we need not consider whether the evidence would support termination under subsections (N) and (O). *See A.V.*, 113 S.W.3d at 362.

Accordingly, Father's second through fifth issues are overruled.

## BEST INTEREST

Father argues the evidence is legally and factually insufficient to support a finding that termination of his parental rights is in T.D.'s best interest.

### 1. Applicable Law

When considering the best interest of a child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[4]

---

[4] These factors include:

> (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child [or] the child's parents . . . ; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills . . . ; and (13) whether an adequate social support system . . . is available to the child.

TEX. FAM. CODE ANN. § 263.307(b).

*See id.* § 263.307(b).  We also consider the *Holley* factors.[5]  *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors are not exhaustive.  *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).  "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child."  *Id.*  In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent.  *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory ground for termination may also constitute evidence illustrating that termination is in the child's best interest.  *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest).  "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence."  *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).  "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest."  *Id.*

### 2. Analysis

As mentioned above, the trial court heard testimony regarding Father's alleged sexual abuse towards N.H. and another minor child, which supports a finding that Father's conduct endangered T.D.  For the reasons explained in the statutory grounds section, the trial court could

---

[5] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions.  *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).

have formed a firm belief or conviction that termination of Father's parental rights was in T.D.'s best interest because he is a present and future emotional and physical danger to T.D. *See C.H.*, 89 S.W.3d at 27 (holding absence of evidence supporting some of the best-interest factors would not preclude termination, "particularly if the evidence were undisputed that the parental relationship endangered the safety of the child"). This reasoning likewise supports a conclusion that Father cannot provide for the child's emotional and physical needs. The trial court also heard evidence that Father was incarcerated at the time of trial. *See id.* at 28 ("[U]ndisputed evidence established not only that [Father] is unable to care for the child from prison, but that he has also exhibited a pattern of conduct that is inimical to the very idea of child-rearing."); s*ee also In re S.L.W.*, No. 04-22-00425-CV, 2023 WL 28451, at *5 (Tex. App.—San Antonio Jan. 4, 2023, pet. denied) (mem. op.) (alteration omitted) ("A parent's criminal activities and history are relevant to a best-interest analysis.").

In contrast, the trial court heard testimony on the second day of trial that T.D. had recently been placed with her grandparents and, according to Coronado, is "still adjusting" but "doing good." Coronado expressed that she had no concerns with T.D.'s placement with the grandparents, and she believed they will be able to provide T.D. with a safe and appropriate home now and in the future. Aunt testified the siblings are in contact and maintain a good relationship. Grandfather and Grandmother both testified that allowing Father's appointment as any type of conservator would significantly impair T.D.'s physical health and emotional development. They both testified they will not allow T.D. to have contact with Father if his parental rights are terminated. Grandmother opined she is able to provide T.D. with a safe and stable environment. When asked how T.D. was doing in her care, Grandmother stated she "is doing wonderful[,]" and Grandmother "has not had any issues whatsoever with her." Grandmother also testified T.D. is not having any

issues at school. Finally, Grandmother stated T.D. is receiving counseling, and the grandparents will continue taking T.D. to counseling for "[a]s long as we need[.]"

Having reviewed the record and considered all the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or conviction that termination of Father's parental rights was in T.D.'s best interest, particularly considering the evidence that Father posed a danger to T.D. *See id.* § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573; *see also generally In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (recognizing a reviewing court need not detail the evidence if affirming a termination judgment). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

Father's sixth issue is overruled.

### TEX. FAM. CODE ANN. § 263.4011

In his first issue, Father argues he is entitled to a new trial because the trial court did not render a final order within ninety days after the date the trial commenced.

Section 263.4011 of the Texas Family Code provides:

(a) On timely commencement of the trial on the merits under [s]ection 263.401, the court shall render a final order not later than the 90th day after the date the trial commences.

(b) The 90-day period for rendering a final order under [s]ubsection (a) is not tolled for any recess during the trial.

(c) The court may extend the 90-day period under [s]ubsection (a) for the period the court determines necessary if, after a hearing, the court finds good cause for the extension. If the court grants a good cause extension under this subsection, the court shall render a written order specifying:

(1) the grounds on which the extension is granted; and

(2) the length of the extension.

(d) A party may file a mandamus proceeding if the court fails to render a final order within the time required by this section.

TEX. FAM. CODE ANN. § 263.4011.

Here, trial commenced on October 24, 2023. Therefore, under section 263.4011, the trial court should have rendered its final order no later than January 22, 2024. The record does not contain a written order extending the ninety-day period.

However, the children's ad litem and T.D.'s grandparents asked the trial court to recess trial so the Department could look at placing T.D. with the grandparents. The Department called its first witness, asked a few questions, and then the trial court recessed the trial until January 12, 2024. Father did not object to the recess.[6]

Trial resumed on January 26, 2024.[7] The trial court was informed that T.D. was placed with her grandparents and an agreement was reached on conservatorship and access to the children.[8] T.D.'s grandparents would be T.D.'s sole managing conservators, and Aunt and her fiancée would be N.H. and W.H.'s sole managing conservators. The Department was still seeking termination of Father's parental rights to T.D. The Department requested the trial court refrain from making a final ruling "for at least three weeks" so the Department can negotiate permanency care assistance benefits ("PCA benefits") for Aunt and her fiancée. The Department told the trial court it wanted to incorporate the PCA benefits agreement into the final order. Father did not object to the Department's request to take the matter under advisement for three weeks and delay entering the final order. The trial court then heard the remaining evidence and all parties closed on January 26, 2024. After the parties closed, the trial court stated it would take the case under advisement, as previously requested, and recessed until February 16, 2024. Again, Father did not object to the recess, nor did he mention section 263.4011 of the Texas Family Code.

---

[6] The trial court also ordered the parties to mediation because the Department was only seeking termination of Father's parental rights. Father did not object to the order for mediation either.

[7] The record does not reflect why the trial did not resume on January 12, 2024.

[8] Father's parental rights to T.D. was not part of the agreement. The agreement also contained matters not relevant to this appeal.

The trial resumed on February 16, 2024. For the first time, Father raised a concern regarding the timing requirements under section 263.4011. The trial court then proceeded to orally render its final ruling.

On appeal, Father claims he is entitled to a new trial because the trial court did not render its final order on or before January 22, 2024. We disagree for two reasons.

First, Father does not direct us to any authority, nor have we found any authority stating he is entitled to a new trial due to the trial court's failure to comply with section 263.4011. Rather, when a trial court fails to timely render a final order, the statute provides a party's remedy is through writ of mandamus, not reversal for a new trial on direct appeal. *See* TEX. FAM. CODE ANN. § 263.4011(d). Father could have filed a mandamus in this court if he wanted to compel the trial court to rule within ninety days of the date the trial commenced. Father did not do so here.

Second, our sister court in Dallas concluded that because "the requirement to enter an order within ninety days of trial is not jurisdictional" the appellant "was required to raise it in the trial court 'by a timely request, objection, or motion.'" *In re G.L.J.*, No. 05-23-01296-CV, 2024 WL 2513311, at *5–6 (Tex. App.—Dallas May 24, 2024, no pet.) (mem. op.) (quoting TEX. R. APP. P. 33.1(a)(1)(A)). The Dallas court reasoned:

> By authorizing parties to 'file a mandamus proceeding' in subsection (d), the [l]egislature contemplated that a court of appeals may enter an order directing the trial court to issue the final order that the trial court failed to enter within the time limit prescribed by subsection (a). It would make no sense for an appellate court to compel a trial court to enter an order that the trial court has no jurisdiction to enter. Thus, the [l]egislature's inclusion of subsection (d) is clear evidence that it did not intend for the deadline in subsection (a) to be jurisdictional.

*G.L.J.*, 2024 WL 2513311, at *6 (citations omitted). We agree with the Dallas Court of Appeals' reasoning and conclude the requirement to render an order within ninety days of the date trial commenced is not jurisdictional.

Thus, to preserve the error on direct appeal, Father was required to raise his concern via a *timely* request, objection, or motion.[9] *See* TEX. R. APP. P. 33.1(a)(1)(A). Here, Father raised the ninety-day concern on the same day the trial court rendered its final ruling, a date beyond the ninety-day deadline. We conclude Father's objection was untimely. Because Father did not timely object, he has failed to preserve the issue for appeal.

### CONCLUSION

We affirm the trial court's order terminating Father's parental rights to the child.

Irene Rios, Justice

---

[9] This opinion should not be read to preclude a party from seeking relief via a petition for writ of mandamus after the ninety-day deadline has expired.